CITY BANK FARMERS TRUST COMPANY, as Executor of and Trustee under the Will of PETER C. HEWITT, Deceased, Appellant, *v.* HEWITT REALTY COMPANY et al., Respondents.

(Argued June 2, 1931; decided July 15, 1931.)

*Charles A. Collin, John L. Wells* and *Thomas L. Hughes* for appellant. Upon the facts the court should exercise its jurisdiction to compel the declaration of dividends. (*Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 N. Y. 185; *Kroger* v. *Jaburg*, 231 App. Div. 641; *Hiscock* v. *Lacy*, 9 Misc. Rep. 578; *Ochs* v. *Maydole Hammer Co.*, 138 Misc. Rep. 665; *Dodge* v. *Ford Motor Co.*, 204 Mich. 459; *Hazeltine* v. *Belfast & C. R. R. Co.*, 77 Me. 445; *Fougeray* v. *Cord*, 50 N. J. Eq. 185; *Laurel Springs Land Co.* v. *Fougeray*, 50 N. J. Eq. 756.)

*Albert S. Wright* and *Ellwood Thomas* for respondents. The directors exercised a proper and wise discretion in not declaring dividends and they were not actuated by bad faith, dishonest purpose of other improper motive. (*Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 N. Y. 185; *Karnes* v. *Rochester & Genessee Valley R. R.*, 4 Abb. Pr. [N. S.] 107.)

POUND, J. Plaintiff, a stockholder of defendant corporation, holding 100 shares of stock in trust as part of a trust created by the will of Peter Cooper Hewitt, seeks by this action to compel declaration of dividends by the individual defendants, directors of the corporation.

The Hewitt Realty Company was organized in 1905, under the laws of the State of New York, " to invest in real property, improved and unimproved, situated in the State of New York and in other States of the United States and in foreign countries; and in the stocks, bonds and other securities and obligations of other corporations and of individuals, and in personal property generally of whatsoever nature; to acquire such real and personal property by purchase, lease, gift, devise, bequest, appointment or other lawful manner; to hold, manage, lease, mortgage, pledge and sell the same, and to improve and develop real estate by erecting buildings thereon and by

carrying on agriculture, forestry, mining and quarrying thereon and to conduct all lawful business incidental thereto." Its authorized capital stock was 600 shares of the par value of $10 each, all of which was issued to Sarah Amelia Hewitt in exchange for real property in . New York city and Bar Harbor, Maine, actually worth $255,050. A New Jersey corporation, known as the Ringwood Company, was organized at the same time and for the same purposes and in the same way. Mrs. Hewitt transferred the Hewitt stock to the Ringwood Company. Upon her death in 1912 the Ringwood stock was divided among her six children who afterwards acquired the Hewitt stock as a stock dividend. Peter Cooper Hewitt, the plaintiff's testator, was one of the children. He had married a second wife, Maryon J. Hewitt. They had a daughter, Ann Cooper Hewitt. He died August 25, 1921, leaving a will. By the terms of the will the plaintiff, as trustee of the trust fund above mentioned, is entitled to receive the dividends declared on 100 shares of stock in the Hewitt Realty Company. One-third of the income of the trust fund is to be applied by the plaintiff as such trustee to the use of the surviving wife, Maryon (since remarried and now Maryon McCarter), and the remaining two-thirds of said income is to be applied by the trustee to the use of their daughter, the said Ann Cooper Hewitt, the sole surviving issue of said Peter Cooper Hewitt.

Maryon McCarter and Ann Cooper Hewitt can receive nothing but income from the trust fund and it is contended that unless dividends are declared they will have no income therefrom. The corpus goes elsewhere when they die. The board of directors is controlled by the Hewitt family. It has acquired real estate, large in extent and valuable in amount, which it does not sell.

The situation of all the other life beneficiaries in respect to dividends is identical. Mrs. Maryon (Hewitt)

McCarter and her daughter deem themselves aggrieved although the others are content. During his lifetime Peter Cooper Hewitt was a director of the corporation and as such up to 1918 approved the policy and transactions of the board. The corporation has made no new purchases of property since the death of Peter Cooper Hewitt. It declared and paid dividends at the rate of five and three-fourths per cent on its capital stock of $6,000 in the year 1906 and at the rate of six per cent in each of the years from 1909 to 1922, inclusive, but has paid no dividends since 1922. The company started out with a capital of $6,000 and a book surplus of $249,050, which might have been realized on and divided among the stockholders when the real estate was sold if such was the purpose of the corporation, but dividends are declared on the shares of stock and not on surplus.

The balance sheet of the company's affairs as of October 1, 1929, as claimed by plaintiff, shows that it had real estate of the value of $1,735,000 incumbered, under lease and paying a substantial rental; cash $43,484.96; mortgages and accounts $516,803.79, making a total of $2,295,288.75. It had a substantial book excess of assets over liabilities. The trial court has found that, although its net profits from 1924 have been from $60,000 to $100,000 a year, its readily liquid assets do not exceed the reasonable requirements of the company to enable it to meet its future needs and to provide a reserve against contingencies which are reasonably apt to arise in the near future, for payment of mortgages and improvement and repairs of real property.

The policy of the directors of the company of not paying dividends has been based on their belief that all substantial indebtedness of the company should be liquidated before dividends are declared. This policy was recognized by the plaintiff in a letter to the corporation dated May 12, 1924, when it said: " We presume that it

would hardly be possible to pay dividends on the stock * * * let us know, first, if there is any further indebtedness to be paid and secondly, whether there is any likelihood of dividends being resumed on the stock of the Hewitt Realty Company." It was not until March, 1927, that it wrote: " in view of the company's very large surplus and its present strong position may we urge that the directors inaugurate the declaration of regular dividends."

Regular dividends of six per cent on 100 shares of $10 each would be $60 a year. We cannot expect that this action is maintained for the purpose of compelling the defendants to declare such a nominal dividend although they are abundantly able to do so. The purpose of the action plainly is to compel them to declare a dividend which shall approximately represent the excess of the value of corporate assets above the aggregate amount of debts and liabilities, including capital or capital stock as the case may be. (Stock Corp. Law; Cons. Laws, ch. 59, § 58.) In other words, the plaintiff now in substance insists on a partial liquidation by the sale of real estate and securities and a division among the stockholders of the proceeds thereof in the form of dividends.

The court below has found that the directors have acted within a proper discretion in not declaring dividends to the stockholders. The plaintiff, to succeed on this appeal, must establish as matter of law that the action of the directors on this record was inimical to the welfare of the corporation and all its stockholders. (*Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 N. Y. 185; *Lindgrove* v. *Schluter & Co.*, 256 N. Y. 439.) It seeks to do this in part by showing that Erskine Hewitt, president and director of the company, is prejudiced by personal animosity against Mrs. McCarter, formerly Hewitt, and her daughter. That such personal animus is visible may not be denied but it does not follow that the impelling

motive of the action of the board was such ill-feeling. On the contrary, the old policy has been continued, not as a freeze-out policy, but to pay debts and provide against emergencies. All the life beneficiaries have suffered alike, unaffected, it would seem, by family differences. The trial court was justified in refusing to make plaintiff's requested finding in this regard.

Nothing else remains to suggest bad faith except the course of business itself. A court of equity will protect a minority stockholder against conduct of the directors which is in breach of the trust confided in them and injurious to the stockholders, but on questions of expediency the courts cannot assume to pass. Such questions are confided by the Legislature in the directors. The courts can, and in a proper case will, compel the trustees to observe the obligations of fiduciary relationship which the law imposes on them. Bad faith, fraud or other breach of trust are grounds for equitable relief. (*Kavanaugh* v. *Kavanaugh Knitting Co., supra*, p. 196.) In particular, if the directors refuse needlessly and improperly to divide what are actually surplus profits, the stockholders have an adequate remedy. (*Dodge* v. *Ford Motor Co.*, 204 Mich. 459, 501.)

In the judgment of the court below, the directors of defendant corporation in withholding dividends acted honestly, in good faith and in the exercise of an honest and unbiased judgment. The questions as here presented are questions of fact about which reasonable men might possibly differ. It cannot be said the decision has no evidence to sustain it. It might be unfair to stockholders for a business corporation constantly to expend its profits in the extension of its business without heed to the claims of stockholders. But that is not this case. This company was formed and has been carried on for the purpose of accumulating profits from year to year and embarking them in its long-continued real estate operations. It is a family affair. A strong case must be

made out to compel the conclusion that it must divide its profits rather than pay its debts or extend its authorized business. The corporation was formed to buy and hold, improve and develop, as well as sell real estate. The state of mind of the directors is displayed as that of men who in executing the corporate purpose would buy real estate on time to hold and sell when conditions are propitious and use the proceeds to pay off outstanding indebtedness. The world knows that such a corporation could not liquidate at this time without prospect of loss.

A minority stockholder has no standing to set aside corporate acts of the directors with one of their number where such acts are not tainted with fraud and are made openly and in good faith, even though the contracting director eventually makes a profit therefrom. (*Hine* v. *Lausterer*, 257 N. Y. 523.) As he may not annul such action, he cannot compel the directors to accept his judgment in matters of discretion.

" The plaintiff is in the position of all minority stockholders, who cannot interfere with the management of the corporation so long as the trustees are acting honestly and within their discretionary powers." (*Burden* v. *Burden*, 159 N. Y. 287, 308.) It may not compel the desired corporate action at this time.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.