ORLANDO ORANGE GROVES COMPANY, a Corporation Under the Laws of the State of Florida, F. H. THWING, C. DE-WITT MILLER, M. O. OVERSTREET; J. P. HOLBROOK; J. P. HOLBROOK COMPANY, a Corporation Under the Laws of the State of Florida; CLARENCE BROWN; E. C. DUCKWORTH; L. M. ROBERTSON and N. P. YOWELL, *Appellants,* vs. HENRY M. HALE; FRANK N. STENGLE, W. D. WAY; CLARA B. MICHAELS, Joined by her Husband, A. P. MICHAELS; and MABEL B. McCUTCHEON and CHARLES RAYMOND McCUTCHEON the Last Will and Testament of GEORGE D. McCUTCHEON, deceased, *Appellees.*

144 So. 674.

Opinion filed November 25, 1932.

Petition for rehearing denied December 15, 1932.

*Tilden & Hays, W. H. Poe,* and *Dickinson & Dickinson,* Solicitors for Appellants;

*Crawford & Gaskins,* and *E. W. & R. C. Davis,* Solicitors for Appellees.

DAVIS, Commissioner.—The bill in this case was filed by certain minority stockholders, one of whom was a director, in Orlando Orange Groves Company, a corporation, in their own behalf and in behalf of all other similarly situated stockholders in said company, against the said corporation, J. P. Holbrook Company, and the officers and directors of the said Orlando Orange Groves Company, some of whom were not stockholders therein.

It is shown by the bill that J. P. Holbrook, a non-stockholder, and one F. E. Baxter were employed as general managers and sales agents of the Orlando Orange Groves Company in 1921, and that they were to háve charge of the assets of the company and the development and sale of 4,000 acres of land owned by the company, subject only to the general supervision and sale of the company. Under the terms of the contract Holbrook and Baxter were to get 50 per cent. of the net profits derived from the company's business, for the sale of lands, and they were to maintain offices for the transaction of the company's business at their own expense, but the company was to pay for extra help needed for the company's business. Holbrook and Baxter were each allowed a drawing account of $300.00

per month, chargeable against their proportion of net profits. The contract was to continue until terminated by either of the parties to same.

The bill of complaint *alleged* J. P. Holbrook, the Secretary and Treasurer, and also a director, and F. H. Thwing, the President, *with improper* conduct whereby the funds of the corporation and its properties are being used improperly and illegally by J. P. Holbrook, and the J. P. Holbrook Company, of which Holbrook is the owner and controller, having taken large sums of money out of the treasury of the corporation, and the said F. H. Thwing having purchased certain securities, and making a profit out of same; that the company had sold property to the amount of Two Hundred Ninety-four Thousand and No/100 ($294,000.00) Dollars, of which Ninety-four and No/100 ($94,000.00) Dollars was paid in cash, and the balance, Fifty Thousand and No/100 ($50,000.00) Dollars per year, beginning December 13th, 1931; that Baxter abandoned his contract; that Holbrook drew from the Company for himself and the J. P. Holbrook Company large amounts of money, totalling approximately Sixty Thousand ($60,-000.00) Dollars, and that the Directors had improperly and illegally authorized J. P. Holbrook and J. P. Holbrook Company to borrow from the Orlando Orange Groves Company; that one J. P. Ristig was improperly removed as a director and N. P. Yowell put in his place, and that notices of Directors' meetings were not given to Hale, one of the complainants. It is also shown that but "little remains outside of the notes, among the assets of the Company, save and except wild lands and about sixty acres of improved orange groves, all of which may be disposed of without great cost and expense, and that the withdrawal of vast sums of money from the company is unwarranted and unnecessary, and a depletion and wasting of the company's assets." A temporary injunction was prayed for restrain-

ing the defendants from making further withdrawals of the funds of the Orlando Orange Groves Company, and from any further dealings in its property. A temporary injunction was granted by the Court. The bill was amended, waiving the oath to the answer. Defendants filed answer and moved the Court for a dissolution of the injunction. The motion was heard, upon the bill and answer, the latter being duly sworn to by Holbrook, and the same was denied by the Court. The answer admits the sale of the property to Davenport for Three Hundred Thousand and No/100 ($300,000.00) Dollars, and denies improper conduct in handling the finances of the corporation, and any improper conduct on the part of the Board of Directors. It sets out the discharge of J. P. Ristig for incompetency and disloyalty, and the election of N. P. Yowell in his place and stead. It shows that all of the dealings with Thwing were for the purpose of securing funds absolutely necessary for the use of the corporation, Orlando Orange Groves Company, in paying its obligations. The answer shows that Baxter sold his interest to J. P. Holbrook in the contract between Baxter, Holbrook and Orlando Orange Groves Company, and that the company then recognized J. P. Holbrook as the sole operator under that contract, and proceeded with him instead of with Holbrook and Baxter. The answer further sets out that J. P. Holbrook and J. P. Holbrook Company advanced during the years 1925, 1926 and 1927, to Orlando Orange Groves Company, something over Fifty-five Thousand and No/100 ($55,000.00) Dollars, and denies insolvency of J. P. Holbrook and J. P. Holbrook Company; it sets up and shows profits then accrued sufficient to wipe out any liability of J. P. Holbrook and J. P. Holbrook Company to Orlando Orange Groves Company. The answer admits an indebtedness of J. P. Holbrook Company to the Orlando Orange Groves Company, at the time of filing the bill, of

approximately Eighteen Thousand Three Hundred Seventy-nine and 01/100 ($18,379.00) Dollars.

The appellants have assigned as error (1) the granting of the temporary injunction, (2) the granting of the temporary injunction *without notice* and (3) the denial of the motion to dissolve the injunction.

We will take up first the assignment of error based upon the denial of the motion to dissolve the injunction for the reason that if we should determine that the Court committed no error in making that order, there should be no reason for passing upon the other assignments of error.

In Robbins vs. White, 53 Fla. 613, 42 So. 841, we held in effect that where the allegations of a bill warrant the granting of a temporary injunction, if the sworn answer positively denies the allegations of the bill upon which complainants' equity, if any, depends, and the answer also contains responsive averments sufficient, if sustained, to defeat the injunction, a motion to dissolve the injunction, heard by consent solely on the bill and sworn answer, the oath to the answer not being waived in the bill, should be granted. In the instant case the bill of complaint, as amended, waived answer under oath. This, however, did not deprive the defendants of the right to answer under oath. Such a waiver alone cannot be used as a basis for an order dissolving temporary injunctions in cases where the answer denies the allegations of the bill and is otherwise responsive thereto. The waiver of an answer under oath merely affects the rules of evidence on final hearing. Under our Statute (Section 4970) (3178), Compiled General Laws of Florida, 1927), upon motion to dissolve an injunction either party has the right to introduce evidence, and the chancellor shall dissolve or continue the order according to the weight of the evidence, and this Court has adhered to the rule that on application to dissolve a temporary injunction on bill, answer and affidavits, the chancellor must be governed by the weight of the evidence. Indian River

Steamboat Company, vs. E. C. Tran. Co. 28 Fla. 387, 10 So. 480, 29 A. S. R. 258; Sullivan vs. Moreno, 19 Fla. 200; Fuller v. Cason, 26 Fla. 476, 7 So. 870; Baya vs. Lake City, 44 Fla. 491, 33 So. 400; Ogden vs. Baile, 69 Fla. 458, 58 So. 671.

On a motion to dissolve an injunction, the burden of proof is on the defendant. 10 Enc. Pl. & Pr., 1082.

If, after the answer comes in, there remains a reasonable doubt as to whether the equity of the bill is sufficiently negatived, the Court may continue the injunction to the hearing. Yonge vs. McCormack, 6 Fla. 368; McKinne vs. Dickinson, 34 Fla. 366, 5 So. 34; 32 C. J. 416.

On motion to dissolve an injunction on bill and answer, where sufficient equities are stated in the bill, the Court will look to such facts of the answer only as are responsive to the bill; and a respondent will not be permitted to rely upon new matter in avoidance in his answer, not in response to the allegations upon which the equities of the bill are founded. Yonge vs. McCormack, 6 Fla. 368; Indian River Steamboat Co. vs. E. C. Trans. Co., supra; 32 C. J. 421; 14 R. C. L. 468.

The bill in the instant case was sworn to by Henry M. Hale and W. D. Way, and the answer was sworn to by J. P. Holbrook.

The allegations of the bill upon which the complainants rely for relief are not denied, but are, in the main, expressly or impliedly, confessed by the answering defendants, who endeavor to justify the alleged acts of wrongdoing charged in the bill, or to explain them. In the absence of a denial, the Court was justified in denying the motion of defendants' to dissolve the temporary restraining order, unless the equities of the bill are insufficient for injunctive relief.

It is the rule here that an application to dissolve an injunction on bill and answer brings up the question as to

whether or not the equities of the bill are sufficient to justify the writ in the first instance (I. R. Steamboat Co. vs. E. C. Trans. Co., supra). It therefore becomes necessary for us to inquire whether the bill sets forth sufficient grounds for the issuance of such a writ.

By resolution adopted by the Board of Directors of the Orlando Orange Groves Company, a copy of which is made a part of the bill, authority was given "for the J. P. Holbrook Company to borrow money from the Orlando Orange Groves Company," and vice versa.

It is shown by the bill that the Orlando Orange Groves Company, in addition to statutory powers, had the power "to do a real estate brokerage business, to plant out, manage, and care for citrus groves properties; to own and conduct packing houses, and all other matters incident to said lines of business; that the said defendant company has an authorized capital stock of $500,000.00 divided into 5,000 shares each of the *par value* of *$100.00;* that the principal business of the said corporation was to acquire real estate, consisting mostly of wild land, clearing the same, planting and caring for citrus fruit trees on the said land, improving the same by the construction of hard roads, and furnishing available water, and selling the same at an advanced price."

Generally a corporation can exercise only powers expressly conferred by act of incorporation and implied powers necessary to the performance of authorized functions. Furthermore, an act is ultra vires a corporation when it is beyond and outside of the scope and powers conferred by its founders, when the corporation is without authority to perform it under any circumstances, or for any purpose. Randall vs. Mickle, 103 Fla. 1229, 138 So. 14.

There is no express allegation that the Orlando Orange Groves Company had no power, under its charter, to lend

money, but from what is alleged it may be inferred that it was without such power, except, it may be, as an incident to the business it was authorized to transact.

Another instance of improper conduct and mismanagement relied upon by complainants for the issuance of the injunction, was the sale of certain securities of the Orlando Orange Groves Company to its President, Thwing.

In 14a C. J. 118, the authors say:

"Some of the courts take the broad and unqualified view that a director cannot be allowed to make and take contracts with the company of which he is a director. Another view is that a contract between a corporation and its officers is not void per se, but is voidable at the option of the corporation or its representative, provided the option is exercised within a reasonable time under all the circumstances of the case. Except for the power of ratification which this rule reserves to the stockholders it is essentially the same as the rule which holds such contract absolutely void, for under it as against the will of the corporation, exercises within a reasonable time, such engagements are given no contractual force, however open, fair, and honest they may be. The rule obtaining in a majority of jurisdictions is that a director may deal or contract with the corporation where he acts in good faith and the corporation is represented by a quorum of disinterested directors or other independent officers or agents authorized to contract for it. Such a contract is not void per se nor is it voidable, except for unfairness or fraud, for which it will be closely scrutinized in equity." Se also 7 R. C. L. 481-2.

This Court is in harmony with the view that a purchase by a director, officer or agent of a corporation of property from the corporation is not void, but is voidable at the option of the corporation, and that the burden of showing the validity of such a contract, and the fairness and honesty of such a transaction with the corporation is on the director, officer or agent. Chipola Valley Realty Co. vs. Griffin, 94 Fla. 1151, 115 So. 541. See also 14a C. J. 120; 7 R. C. L. 760. In this case there is no contention that the sale of the

said securities should be vitiated. It is set up merely as one of several acts of mismanagement, as a basis for the relief sought.

It is also charged that Holbrook dominated and controlled the Board of Directors of the Orlando Orange Groves Company, and that he had drawn out of the funds large sums of money far in excess of the amount permitted him by his contract, and it is argued here that if this had not been done there would have been no necessity for selling the securities purchased by Thwing. The contract fixing the amount of Holbrook's compensation and how it was to be paid does not state when the "net profits" of the corporation, of which Holbrook and Baxter were to receive fifty per cent. should be ascertained, nor what is to be considered in arriving at the "net profits." In the absence of a definite agreement, we hold with the Texas Court of Civil Appeals that net profits, generally speaking, implies what remains in the conduct of a business after deducting from its total receipts the expenses incurred in carrying on the business and that to such expenses may be charged taxes, upkeep, depreciation and interest on the corporation's debt, but not interest on its capital, and that as a general rule, any loss in the capital stock must be replaced before estimating earnings. Dealers Granite Corp. vs. Faubion, 18 S. W. (2nd) 737, cited in 76 A. L. R. 887. The Court being cognizant of the shrinkage in real estate values and real estate securities in Florida during the period after the year 1925, we can see how the interest of stockholders might suffer, with Holbrook, prior to the ascertainment of the net profits, drawing large sums from the available cash of the corporation on the strength of his paper profits.

"While directors of a corporation may not be in the strict sense trustees, it is well established by the decisions that they occupy a quasi fiduciary relation to the corporation and its stockholders. * * * * They are required

to act in the utmost good faith, and in accepting the office they impliedly undertake to give to the enterprise the benefit of their best care and judgment, and to exercise the powers conferred solely in the interest of the corporation. Clothed with the power of controlling the property and managing the affairs of the corporation, without let or hindrance, as to third persons they are its agents, but as to the corporation itself, equity holds them liable as trustees.'' 7 R. C. L. 456-7; Chipola Valley R. Co. vs. Griffin, 94 Fla. 1151, 115 So. 541.

''Equity will protect a minority stockholder against conduct of the directors which is in breach of the trust confided in them and injurious to the stockholders, but cannot assume to pass upon questions of expediency.'' City Bank Farmers' Trust Co. vs. Hewitt Realty Co., 257 N. Y. 62, 177 N. E. 309, 76 A. L. R. 881. See also 7 R. C. L. 308.

''If the officers of a corporation wrongfully deal with its property; to the injury of the stockholders, the latter may maintain a bill against the corporation and its officers for relief against such misappropriation.'' 7 R. C. L. 316.

Officers of corporations, because of their fiduciary character, are required to act with the utmost good faith, and they are forbidden to deal in or handle the funds or property of the corporation to their own advantage. Jacksonville Cigar Co. vs. Dozier, 53 Fla. 1059, 43 So. 523; Chipola Valley Realty Co. vs. Griffin, supra; Luria vs. Bank of Coral Gables, 106 Fla. 175, 143 Sou. 598, 3 R. C. L. 465.

It is within the power of a court of equity, at a final hearing, to inquire into the wrongfulness of the acts complained of, and also into the good faith of the officers and directors.

It is urged here on behalf of appellants, that when the directors or managing Board of a corporation are charged with mismanagement or misappropriation of the corporate property, action, if taken by the corporation, unless complaining stockholders bring themselves within an exception to the rule by showing that such mismanagement or mis-

appropriation will result in injury to the corporation, and incidentally, to the stockholder, and that they must further show that they have exhausted all means at their hands to get redress of grievances within the corporation without results, or show facts which would justify a Court in concluding that an effort for redress within the corporation would be unavailing. This contention is sustained by numerous decisions in this country, many of which are cited by appellants. Perhaps the leading case is Hawes vs. Contra Costa Water Co., 104 U. S. 450 26 L. ed. 827, where it is said:

"Before the shareholder, in his own name, is permitted to institute and conduct a litigation which usually belongs to the corporation, he should show, to the satisfaction of the court, that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it."

It is a settled principle of equity jurisprudence that before a court of equity will open its doors to dissenting stockholders, although they come, as they must, not only on behalf of themselves, but also in behalf of all others, to an inquiry into grievances like those set out in the bill, they must show that there is no other road to redress, and they do not show this unless they show that all remedies within the corporation itself have been exhausted. Caldwell v. Eubanks (Mo.), 30 S. W. (2nd) 976, 72 A. L. R. 621 and note.

The bill does not show that complainants requested the

directors to institute proceedings in the name of the corporation to obtain the relief which they seek for themselves, but the facts alleged indicate that such a request would not have served any useful purpose. Dissenting stockholders may sue in their own name to enforce the rights of the corporation without a demand upon the directors if they, whether by reason of hostile interest or guilty participation in the wrongs complained of, cannot be expected to institute suit, or, if they do, it is apparent they will not be the proper parties to conduct the litigation. 7 R. C. L. 332; Sohland v. Baker, (Del.) 141 Atl. 277, 58 A. L. R. 693; Caldwell vs. Eubanks, supra.

Under the showing made by the bill in the instant case, a request that the directors sue themselves would have been fruitless. Then too, the Court would not permit directors to conduct litigation against themselves even if they were willing to do so. Caldwell vs. Eubanks, supra.

But it is argued that resort could have been had to the stockholders for redress, and that it should be shown that this was done and that the stockholders refused to take action before starting this proceeding. In this state, the law provides that the business of every corporation shall be managed by a *Board of Directors* who shall be chosen at annual meetings of the stockholders. Sections 6555 and 6557, Compiled General Laws of Florida. Moreover, if it was within the power of stockholders to take such matters out of the hands of directors, in cases of emergency, it would be impossible to issue a legal call for a stockholder's meeting and have them act or refuse to take action in time for any contemplated proceedings to be of value to the corporation or to complaining stockholders.

It is our judgment that it has not been shown that the bill is without sufficient equity to authorize the chancellor to issue the said temporary restraining order.

It follows that the errors appealed from should be affirmed and it is so ordered.

PER CURIAM.—The record in this case having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, Extra Session, adopted by the Court as its opinion, it is considered and ordered by the Court that the decrees of the lower Court be and the same are hereby affirmed.

BUFORD, C.J. AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.