PIERCE, Judge.
August G. Pruyser (plaintiff in the Court below) filed complaint against Leroy Frank Johnson (defendant below), alleging an indebtedness due to him by Johnson arising out of a promissory note dated October 20, 1958, signed by Johnson in favor of Florida Growers, Inc., a Florida corporation, in the principal amount of $4,000.00, with interest at the rate of 6% “from August 24, 1955,” which said note had been subsequently assigned “for value received without recourse” to Pruyser. Said note called for payments of $1,000.00 on June 15th of each year beginning with 1960 and ending 1963. Alleging that nothing had been paid upon the note Pruyser alleged there was due thereon the total sum of $6,283.21, plus a reasonable attorney’s fee. A copy of the *518 note was attached to the complaint, which note contains on the back thereof in handwriting an undated purported assignment, reading:
“For value received we hereby sell, assign and set over this note, without recourse to August G. Pruyser.
Florida Growers, Inc.
a Florida Corporation by
(signature) August G. Pruyser President.”
Motions to dismiss and for more definite statements were filed by defendant Johnson, whereupon deposition of plaintiff Pruyser was taken, followed by interrogatories propounded to, and answered by, various persons whose names had been mentioned by Pruyser in his deposition. Thereupon defendant Johnson filed a motion for Summary Judgment and, upon hearing, Summary Judgment was entered by the Court in favor of the defendant. The Court held that Pruyser was not a holder in due course nor the legal owner of the promissory note sued upon and that the pleadings and evi-dentiary matter on file showed no genuine issue to exist as to any material fact, thus entitling defendant Johnson to a Summary Judgment as a matter of law. From such Final Order plaintiff Pruyser has taken this appeal and assigns as error the entry by the trial Court of said Summary Judgment and the findings and conclusions therein made.
Plaintiff Pruyser’s testimony upon deposition is an anomaly of contradictions. He identified himself as a dealer in flower bulbs in Delray Beach, Florida, practically retired, but at one time “the owner of a corporation known as the Florida Growers, Incorporated,” the payee in the promissory note sued upon, and of which company defendant Johnson was an employee. Pruy-ser stated that about a year before the note was given, which would be sometime around the early fall of 1957, “we loaned him that money in order to build a rather expensive swimming pool and some improvements on the house,” carport, garage, etc. He said the note was accompanied by a mortgage on Johnson’s home, which mortgage had never been recorded, and that while he originally had the mortgage, it had been misplaced or misfiled and he could not find it. He recalled that Florida Growers went into receivership “probably in September of 1957,” that it “operated on the receivership for about a year,” and was adjudicated a bankrupt on October 30, 1958. (Federal Court records showed action on receivership on September 25, 1957, and adjudication as a bankrupt on October 20, 1958).
Pruyser’s attention was called to the undated endorsement on the back of the note, supra, and when asked how that came about, he replied “that was accomplished in the office of Mr. DeBoest (his attorney). He asked me — I showed him the note. He asked if the note had been endorsed, so I endorsed that note.” He stated that this took place “on the 6th of May, 1964” (or 6 years, 8 months after the company went into receivership, and 5 years, 8 months after it was adjudicated a bankrupt). He stated he had bought the note “in 1958, I believe, from the Receiver * * * the gentleman in West Palm who’s now identified as — connected with the real estate firm of — you know the name — Studback (sic) or Hollenbeck, isn’t it?” (Appellee’s counsel, present at the deposition, clarified the name of the real estate firm as being Studstill & Hollenbeck, Incorporated, 10 South Olive Avenue, West Palm Beach, and the name of the “gentleman” was identified as R. L. Callaway, who later gave deposition). Pruyser was unable to throw any light on how he failed to get the mortgage at the time he supposedly “bought” the note. He also was in hopeless contradiction with himself as to just what the deal was with reference to Johnson’s home in Hastings, stating variably under oath that “it was purchased by the company” that “a party in Hastings bought the house” and “I believe that Johnson bought it himself.” Going back to the endorsement of the instant note on May 6, 1964, Pruyser admitted that at that time the Company had been *519 dissolved, that he was no longer the President, and that he had “resigned from the Growers.”
Joseph I. Bogart, Clerk of the U. S. District Court, Southern District of Florida, in Miami, deposed by answers to interrogatories, and identified the receivership and bankruptcy records of Florida Growers, Inc., the dates, adjudications, etc. R. L. Callaway, representative of Studstill & Hollenbeck, realtors, of West Palm Beach, Florida, testified by interrogatories that he had never had any business dealings with Pruyser, and did “not recall ever having heard his name before”; that neither he nor his firm had ever bought, received, or that he had ever even seen, the instant note, and that this statement was made “after a thorough check of our records.” John Nicholas, by deposition, said his business was and had been a receiver and trustee in bankruptcy in Miami, that on September 25, 1957, petition for arrangement under Chapter 11 of the Bankruptcy Act was filed on behalf of Florida Growers, Inc., that the company continued in possession of the business until December 23, 1957, at which time he and one C. C. Callaway took over the business as co-receivers until their discharge on June 17, 1958, that the company thereupon resumed operation of the business until September 14, 1958, when the co-receivers were reappointed and resumed operation as Court representatives until the company was adjudicated a bankrupt on October 23, 1958. He remembered the note and mortgage in question as bearing date of October 20, 1958, that the signatures of Johnson and his wife were both on the mortgage but that Johnson’s name only was on the note, that he didn’t know “how and when they came into my possession,” that the note was attached to the mortgage, that the mortgage covered certain specifically described land in McClung Subdivision in Hastings, Florida, that he had no personal recollection, and the records of his office did not definitely disclose, just what disposition was made of the note and/or mortgage. He stated he did not remember the name of August Pruyser in connection with the bankruptcy proceedings, nor did he have any contacts with Pruyser as receiver.
The foregoing is a fair résumé of the confused record before this Court. There are only two things deducibly certain therefrom: (1) the meandering of the Johnson note was shrouded in doubt from the time of execution until it showed up in this law suit, and (2) plaintiff Pruyser is definitely not a lawful holder in due course of the note and therefore has no standing to now sue thereon. We are concerned here with only the second observation.
The rule was uniform in this State, through a long line of cases, from 1895 in Wilkinson v. Pensacola & A. R. Co., 35 Fla. 82, 17 So. 71, to 1952 in Fincher v. Fincher, Fla.1952, 55 So.2d 800, that the plaintiff must recover, if at all, on the case made by his complaint, or to put it another way, that no recovery can be had on a cause of action substantially variant from the one alleged.
At first blush, it would seem that this Court departed from that rule in Robbins v. Grace, Fla.App. 1958, 103 So.2d 658, the first headnote of which reads:
“[t]he rule that allegata et probata were required to coincide became obsolete with the adoption of the 1954 Rules of Civil Procedure,”
but a careful analysis of that case will reveal it is distinguishable from this. Robbins was a personal injury case, which had been tried to a jury, resulting in plaintiff Robbins taking a nonsuit after the trial Judge had announced he would grant a motion for directed verdict in favor of defendant Grace. Robbins appealed to this Court, which reversed, calling attention to the provisions of Section 1.15(b) F.R.C.P., 30 F.S.A., which provides that:
“When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been *520 raised in the pleadings.” (Emphasis supplied).
Rule 1.15(b) goes on to provide that pleadings may be amended to cause them to conform to the evidence but in each instance where such amendment is mentioned it is conditioned upon a motion therefor being made. Thus the case sub judice differs from Robbins in two vital respects: (1) here there has been no trial on the merits and hence no “express or implied consent of the parties” that “issues not raised by the pleadings” are or will be tried, and (2) here there has been no move by plaintiff to amend his complaint.
One other vital distinguishing feature between Robbins and the instant case is that a review of the facts adduced at the trial in Robbins, as narrated in this Court’s opinion, shows that the trial Court was in error in forcing plaintiff to a nonsuit by announcing he would direct a verdict for defendant, irrespective of Rule 1.15(b), because such facts adduced clearly made out a jury question under the pleadings as they then stood.
So this case, to all intents and purposes, is still subject to the rule that the plaintiff must recover, if at all, upon the cause of action stated in his complaint. When so measured here, the case of plaintiff Pruyser falls hopelessly. In his complaint he planted himself definitely upon the proposition of the execution of the promissory note by defendant Johnson in favor of Florida Growers, Inc., the assignment thereof for value received and without recourse by Florida Growers, Inc. to Pruyser, and that nothing whatever had been paid upon the note.
But in the evidence developed before the trial Judge upon hearing of the Summary Judgment motion, Pruyser contended under oath that he bought the note in question for “full face value” from the real estate firm of Studstill & Hollenbeck, Inc., in West Palm Beach, which firm had purchased the note and the mortgage securing same from the trustee of the bankrupt estate of Florida Growers, Inc. It was estab-' lished from uncontradicted testimony that that firm had never bought or otherwise acquired either the note or mortgage in question from the trustee in bankruptcy or from any other person, that it had no knowledge at all of the bankruptcy proceeding or sale of any assets of Florida Growers, Inc., and that it had never assigned or transferred, or had any occasion so to do, the note involved in this case, and could not even recall ever having heard the name of plaintiff Pruyser, and that a thorough search of the records of the firm disclosed no connection or transaction with such person. Depositions of Nicholas, the receiver, and Bogart, Clerk of the U. S. District Court in Miami, negatived any possibility that Pruyser acquired the note by virtue of any of the proceedings in the bankruptcy case of Florida Growers, Inc.
A more potent consideration ruling this case, however, is the irresistible conclusion that Pruyser as an individual acquired the note in question by flaunting all the law of corporate authority and of negotiable paper. The undated assignment purported to “sell, assign and set over” the note to “August G. Pruyser” and was signed “Florida Growers, Inc., a Florida Corporation, by August G. Pruyser, President.”
The sworn testimony, however, developed from Pruyser himself disclosed the startling fact that the written endorsement and assignment of the note was made by Pruyser on May 6, 1964, which date was—
—over six years after Florida Growers, Inc., had been placed in receivership;
—over five years after Florida Growers, Inc., had been adjudicated a bankrupt;
—some seven or eight years after Pruy-ser had ceased all official connection with Florida Growers, Inc., either as President, Manager or otherwise.
And it was in that setting that Pruyser presumed to endorse in writing a transfer of that note on behalf of the corporation as its President, to himself personally. One *521 can only conjecture as to how Pruyser came into actual physical possession of the note but it is obvious it had to be under questionable circumstances. Having gotten his hands on the note, he couldn’t very well sue in the name of the payee corporation, which had been through the bankruptcy court some five and a half years previously, so he did the next worse thing of brazenly endorsing the note over to himself individually in the name of the corporation by himself as President, although he had not had any connection with the company for many years. A cursory examination of the authorities is all that is necessary.
F.S. Section 674.57 F.S.A. provides as follows:
“The title of a person who negotiates an instrument is defective within the meaning of this law when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud.”
Where any fraud appears in a negotiation of an instrument the burden of proof shifts and it is incumbent upon the plaintiff to show that he was the lawful holder in due course thereof for value. Barnes v. Boulevard Nat. Bank of Miami, Fla.App. 1960, 124 So.2d 494; Antonacci v. Denner, Fla.App.1963, 149 So.2d 52.
Even bona fide officers or directors of a corporation are bound to act in good faith in the selling or purchasing of property, real or personal, of or for a corporation. Corr v. Leisey, Fla.App.1962, 138 So.2d 795. Generally, a director or officer has no right to purchase corporate property at a judicial or public sale. Etheredge v. Barrow, Fla.App.1958, 102 So.2d 660. An officer of a corporation is bound to account to the corporation for all moneys and property which come into his hands by virtue of his official position, as well as for all sums of money or property which he has wrongfully accepted or withdrawn from the corporation. Flight Equipment & Engineering Corp. v. Shelton, Fla. 1958, 103 So.2d 615.
An officer cannot acquire title to or interest in any property, real or personal, prejudicial and adverse to the corporation. McGregor v. Provident Trust Co. of Philadelphia, 1935, 119 Fla. 718, 162 So. 323. He occupies a fiduciary relationship to the corporation, and will not be allowed to act in hostility to it by acquiring for his own benefit any intangible assets of the corporation. Jacksonville Cigar Co. v. Dozier, 1907, 53 Fla. 1059, 43 So. 523. He cannot make a private profit from his position or, while acting in that capacity, acquire an interest adverse to that of the corporation. Seestedt v. Southern Laundry, Inc., 1942, 149 Fla. 402, 5 So.2d 859. He must act always with utmost good faith, and cannot deal in funds or property of the corporation to his own advantage. Orlando Orange Groves Co. v. Hale, 1932, 107 Fla. 304, 144 So. 674.
Here plaintiff Pruyser was not even connected with Florida Growers, Inc. in any capacity whatever, either at the time the note was first executed or when he later endorsed it to himself. The trial Judge was eminently correct in disposing of the case summarily, adverse to the plaintiff.
The final order appealed from is therefore—
Affirmed.
SHANNON, Acting C. J., concurs.
HOBSON, J., concurs in conclusion.