**FIRST AMERICAN BANK AND TRUST by J.H. LEVITT, Plaintiff,**

v.

**Arthur I. FROGEL, et al., Defendants,**

and

**First American Bank and Trust, Nominal Defendant.**

No. 88–0638–CIV.

United States District Court, S.D. Florida.

Oct. 19, 1989.

Martin R. Raskin, Raskin & Graham, Miami, Fla., for plaintiff.

Bruce W. Greer, Greer, Homer & Bonner, P.A., Miami, Fla., for defendants.

## ORDER DENYING MOTION TO DISMISS

HOEVELER, District Judge.

THIS CAUSE comes before the court upon the defendant's motion to dismiss, a motion to certify a class, and several discovery matters. J.H. Levitt brings a class action and derivative action against certain past and present officers and directors of nominal defendant First American Bank and Trust (Bank). The Bank, through Levitt, alleges that the various directors of the Bank violated section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10(b)(5) (17 C.F.R. § 240.10(b)(5)) and that they breached their statutory and common law fiduciary duties to the Bank and its shareholders. The individual defendants and the Bank defendant move to dismiss the complaint for failure to state a federal cause of action.

As the court must, on a motion to dismiss, accept the plaintiff's allegations as true, the court must deny the motion to dismiss (as discussed below). The stay of discovery is lifted, and discovery shall proceed as provided by the Federal rules and applicable statutes.

## FACTS

As above indicated, the material allegations of the complaint are taken as true and are liberally construed in favor of the plaintiff. *See St. Joseph's Hosp. v. Hospital Corp. of America*, 795 F.2d 948, 954 (11th Cir.1986). The plaintiff, Joseph H. Levitt, sues the Bank and certain officers and directors for violations of the federal securities laws and under state law for breaches of fiduciary duty. In Count I, Levitt, as purchaser of the Bank's stock, seeks to maintain a class action against both the Bank and the individual defendants for alleged violations of § 10(b)(5) and Rule 10(b)(5) of the Securities Exchange Act. In Count II, Levitt, as an owner of the Bank's stock, brings a derivative claim against the individual defendants on behalf of the bank for breach of fiduciary duty and waste of the bank's assets. First American Bank and Trust is a Florida chartered, federally insured commercial bank. The individual defendants are past and present directors and officers of the Bank.

The plaintiff complains that the Bank expanded rapidly in markets not traditionally those of a commercial bank. The Bank acquired various business entities and made large increases in its loans. It is further alleged that Cenvill, a real estate development company; Associated Mortgage Investors; and a 49% interest in a new insolvent health maintenance organization, were all acquired by the Bank.

The plaintiff also complains that the Bank has made large loans to present and former officers and directors. Loans were allegedly made in high risk areas which carried higher interest rates. The Bank recorded the loans at full value, but, the plaintiff alleges, the Bank officers knew that full payment was unlikely. The interest income from these loans was recorded prematurely. In the 1986 annual report, the Bank allegedly failed to state that the health maintenance organization was unprofitable and that it had prematurely booked income. Plaintiff further asserts that in the 1986 report, the Bank states that it had taken a conservative approach

in its loan portfolio, while, in fact, its practices were not conservative.

On December 3, 1987, the FDIC issued a Cease and Desist Order requiring the Bank to increase its capital and reduce its problem loans and restricted the payment of dividends until its capital level was increased as directed. On February 18, 1988, the Board of Directors declared a $.10 per share cash dividend, subject to the attainment of the 6% primary capital ratio. On March 8, 1988, the public was informed that no dividends would be paid. On March 22, 1988, the Board of Directors voted not to pay a cash dividend.

The plaintiff claims that the defendants as senior officers and directors of the Bank were controlling persons of the Bank and are responsible for the acts of the Bank. The plaintiff further alleges that the individual defendants caused the Bank to engage in extremely risky loan practices; that such practices were inadequately and misleadingly disclosed in or omitted from the Bank's public statements to shareholders and investors; that the defendants caused the Bank to record and report an inadequate "allowance for loan losses" in its publicly disseminated financial statements and reports; that the defendants caused the Bank to record and report the risky loans at full value when such loans were not reasonably assured collection; that the defendants further caused the Bank to delay and misleadingly disclose the entry of a Cease and Desist Order by the Federal Deposit Insurance Corporation (FDIC) mandating that over $50 million of the Bank's loans be classified as "loss," "doubtful," or "substandard;" that the defendants caused the Bank to declare a dividend when the FDIC order prohibited such a declaration; that the defendant rescinded the declaration of a dividend with a misleading announcement that the rescission was voluntary when it was actually imposed by the FDIC order; and that the defendant's conduct in false disclosures maintained an artificially inflated stock price of the Bank.

The individual defendants and the nominal bank defendant have moved to dismiss the complaint on several grounds. The court has held two hearings on the various pending motions raised in this action. After the first hearing, the court found sufficient merit in the motions to dismiss to stay all discovery in this case, until the court resolved the motion to dismiss. The court also granted the defendants an extension of time to respond to the class action certification until the court rules on the motion to dismiss.

## DISCUSSION

The defendants move to dismiss on several grounds: (a) the securities fraud claim fails to state with the requisite particularity the acts of fraud required under Rule 9(b); (b) a claim for breach of fiduciary duty and corporate mismanagement is not actionable under 10(b)(5) of the Securities Exchange Act of 1934; (c) irreconcilable conflicts between Levitt's direct claim in Count I and the derivative claim in Count II prevent him from adequately representing the interests of the class in Count I; (d) as to Count II, the plaintiff has failed to assert the demand on the directors as required in Federal Rule 23.1; and (e) the plaintiff has failed to post security for expenses the defendants may incur in a derivative suit.

### A. Particularity Under Rule 9(b)

The defendants argue that the complaint fails to plead with specificity the role of the individual defendants in the alleged wrongful acts. Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The purpose of Rule 9(b) is to ensure that the defendants are on notice of the "precise misconduct with which they are charged" and protecting defendants "against spurious charges of immoral and fraudulent behavior." *Durham v. Business Mgmt. Assoc.*, 847 F.2d 1505 (11th Cir.1988), *citing Seville Indus. Mach. Corp.*, 742 F.2d 786, 791 (3rd Cir.1984). *See also Zuckerman v. Harnischfeger Corp.*, 591 F.Supp. 112, 115 (S.D.N.Y.1984). The application of Rule

9(b) should not abrogate notice pleading. *Durham* at 1511.

Allegations of date, time, or place satisfy the requirement that the circumstances of the fraud be stated with particularity, but nothing in the rule requires such allegations. Alternative means are available to satisfy the particularity requirement, the purpose of which is to place the defendants on notice of the precise misconduct. *Id.* at 1512.

Where multiple defendants are involved, the complaint must distinguish among defendants and specify their respective role in the alleged fraud. *See, e.g., Rhoades v. Powell*, 644 F.Supp. 645, 660 (E.D.Cal. 1986). Such a delineation places the defendants on notice of conduct with which they are charged.[1]

In cases of corporate fraud where the false or misleading information is conveyed in group published information, however, "it is reasonable to presume that these acts are the collective actions of the officers." *Wool v. Tandem Computers*, 818 F.2d 1433 (9th Cir.1987). Under such circumstances the plaintiff may plead misrepresentations with particularity and, where possible, the roles of the individual defendants. *Id.* The presumption of collective action "is equally applicable to members of the boards of directors in corporate fraud actions." *Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir.1988).

The defendants argue that *Blake* is not applicable because the court was ruling on a RICO claim. The issue before the court, however, was whether pleading acts constituting the fraud satisfied the particularity requirement of Rule 9(b) for a RICO claim or for any other fraud claim. The court in *Blake* addressed the adequacy of pleading fraud in situations in which officers and directors of a corporation are charged with the fraud for misrepresentations in documents authorized by such officers and directors as a group decision-making body. The courts in *Blake* and *Wool* presumed collective action for misrepresentation in group published information. *Blake* at 1369; *Wool* at 1440.

Indeed, in case of corporate fraud, the plaintiff cannot be expected to have personal knowledge of all of the facts constituting the wrongdoing. Particularity is satisfied by a statement of the facts upon which the belief of fraud is founded. *Wool* at 1439.

█ Levitt, the plaintiff, has alleged specific acts attributable to the various defendants. The plaintiff has alleged that the defendants essentially acting as a group made false or misleading statements or omissions of material statements in annual reports, reports to investors, and news releases. The plaintiff has mentioned loans and acquisitions by naming the companies and alleges further that the documents fail to disclose the full circumstances of such

---

1. Where defendants participate in various roles in the alleged fraud, the grouping of defendants into one group fails to put them on notice of their involvement in the alleged acts:

> In large and complicated fraud actions such as this, courts must be especially attentive to a plaintiff's 'dragnet' tactic of indiscriminately grouping all of the individual defendants into one wrongdoing monolith. Such a tactic often fails to take account of the law's separate treatment of primary wrongdoers and secondary wrongdoers ... It is insufficient under Rule 9(b) to 'group ... the defendants together without differentiating who might be primarily liable and who might be secondarily liable.' ... Fraud allegations may not rely on blanket references to conduct of 'defendants and each of them,' but must instead inform each defendant of the conduct which constitutes the alleged violation.

*Lubin v. Sybedon Corp.*, 688 F.Supp. 1425, 1443 (S.D.Cal.1988).

The court in *Lubin* dismissed a claim under 10(b)(5) for failure to plead with particularity. Although the complaint in *Lubin* lists the documents containing the alleged misstatements and omissions, it does not attribute the statements to the defendants or differentiate their disparate responsibilities. *Id.* at 1443–44.

The 10(b)(5) action in *Lubin* arose out of the sale of $43 million of limited partnership interests to raise capital for the renovation of a hotel. Unlike the group of defendant officers and directors of the Bank in our case, the defendants in *Lubin* were a diverse group having varying responsibilities in the renovation of the hotel. *Lubin* at 1431–1434. The dispute arose out of the financially failed renovation of the U.S. Grant Hotel in San Diego involving brokers, developers, accountants, law firms, and consulting firms. The plaintiff alleged that defendants misrepresented the prospects for success and the renovation history of the hotel in the documents drafted to solicit investors.

loans and acquisitions. The plaintiff has identified the individual defendants and their positions with the Bank. Hence, the plaintiff has stated the fraud with sufficient particularity.

## B. Mismanagement Under Rule 10(b)(5)

The defendants contend that the complaint states allegations that are acts of mismanagement. The issue before this court is whether the failure to disclose imprudent lending practices, to report loan repayments accurately, and to report bad business ventures is a claim for mismanagement under state law; or whether it amounts to an intentional act to defraud the public under 10(b)(5) of the federal securities laws.

■ Absent allegations of deception, misrepresentation, or nondisclosure, claims of a breach of fiduciary duty and internal corporate mismanagement are not actionable under § 10(b) of the Securities Act. *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). *See Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042 (11th Cir.1987). The court in *Santa Fe* based its decision on the finding that the transactions of the defendants as alleged in the complaint were not deceptive nor manipulative.[2]

The plaintiff cites *Kennedy v. Tallant*, 710 F.2d 711, 718–19 (11th Cir.1983) for the proposition that *Santa Fe* does not apply to "fraud on the market" cases. Fraud on the market cases involve situations in which deception results in an inflated security on the open market. Although reliance is one of the essential elements that a plaintiff must prove to recover under 10(b)(5), the burden of reliance shifts to the defendants to prove that deception was not material where the plaintiff's claim is based on a fraud on the market. *Lipton v. Documation*, 734 F.2d 740 (11th Cir.1984).

*Kennedy*, however, does not hold that a fraud on the market case is an exception to the requirement of *Santa Fe* and is still consistent with *Santa Fe*. In *Kennedy*, the defendants moved to dismiss, asserting that the complaint consisted of claims of corporate mismanagement which were beyond the scope of the federal securities laws. *Kennedy* at 718. The plaintiff investors in *Kennedy* pled that the defendants knowingly entered into a scheme to defraud. *Id.* The Eleventh Circuit affirmed the trial court's denial of the motion to dismiss, for the plaintiff did make allegations that fell within the scope of the federal securities laws: "Appellants were charged with specific acts of intentional fraud in the sale of securities, not mere corporate mismanagement." *Id.* at 719.

■ Failure to disclose the breach of fiduciary duties is not a misrepresentation sufficient to constitute a violation of the federal securities laws. *Biesenbach v. Guenther*, 588 F.2d 400, 402 (3rd Cir.1978). In *Biesenbach*, the misrepresentations consisted of misleading statements by the defendants—the controlling members of the Board of Directors—that transactions were in the best interest of the shareholders as well as defendants' failure to disclose the true purpose behind the activities. *Id.* at 402. The transactions which served as the basis for the misrepresentations were two loans made by the defendants to the corporation at somewhat favorable terms aimed at gaining control of the corporation. *Id.* at 401.

The actions of the Bank and its officers, however, can amount to both breaches of fiduciary duty and violations of the Federal Securities Act. Having the failure to disclose acts of corporate mismanagement

---

2. *Santa Fe* involved a § 10(b) claim by a shareholder frozen out by majority shareholders in a statutory merger. In holding that claims for corporation mismanagement are not actionable under the federal securities laws, the court reasoned that

> Congress by section 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanage-

ment. There may well be a need for uniform federal fiduciary standards to govern mergers such as that challenged in this complaint. But those standards should not be supplied by judicial extension of section 10(b) and 10(b)(5) to cover the corporate universe. *Santa Fe*, 430 U.S. at 479–480, 97 S.Ct. at 1304 (citations and internal quotes omitted).

suffice as a misrepresentation would amount to having all acts of mismanagement providing the bases for a federal claim under Rule 10(b)(5), unless the directors disclosed what is later determined to be an act of bad business judgment.

■ The allegations here, however, concern high risk loans, the consequences of which were not properly disclosed in the Bank's financial reports. The complaint does not end with the allegation that certain loans were unwise and risky, but goes on to state that the repayment and prospects of repayment of such loans were inaccurately disclosed. The plaintiff alleges that the individual defendants caused the Bank to engage in extremely risky loan practices; that such practices were inadequately and misleadingly disclosed in or omitted from the Bank's public statements to shareholders and investors; that the defendants caused the Bank to record and report an inadequate "allowance for loan losses" in its publicly disseminated financial statements and reports; that the defendants caused the Bank to record and report the risky loans at full value when such loans were not reasonably assured of collection. At this stage in the proceedings, the complaint does not conflict with the doctrine expressed in *Santa Fe*.

## C. Conflict between Derivative Action and Class Action

The defendants assert that there is an inherent conflict between the derivative count and the direct count. The defendants argue that the conflict prevents the plaintiff from serving as a fair and adequate representative of the class of investors. In Count I, Levitt seeks a direct financial recovery for a subgroup of present and former shareholders. The former shareholders who have no stake or continuing interest in the future of First American solely desire personal financial gain. On the other hand, in Count II, Levitt claims to represent First American and all its present shareholders.

In Count II, Levitt must act in the best interest of the bank and seek recovery for the bank. Rule 23.1 requires that a plaintiff in derivative actions be a shareholder at the time of the disputed transactions. The defendants argue that the plaintiff could not have purchased stock in reliance on the misrepresentation as well as owned stock at the time of the misconduct. The plaintiff, however, owns more than one share of stock. The plaintiff could well have owned stock and then purchased more in reliance on misrepresentations of the defendants, as he has alleged in the complaint. The plaintiff is not precluded from meeting the ownership or purchase requirements.

The defendants argue that the plaintiffs' role as a class action representative is adverse to his claim in the derivative action. Rule 23.1 requires that the putative plaintiff be a "fair and adequate" representative. In derivative actions brought pursuant to Rule 23.1, the representation requirement is designed to ensure that a stockholder bringing suit derived from the corporation's interest will assume strict "fiduciary" responsibilities. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549–50, 69 S.Ct. 1221, 1227–28, 93 L.Ed. 1528 (1949). In Count I, Levitt and the class he represents seeks a recovery at the expense of the Bank. In Count II he seeks to recover for the corporation to benefit all shareholders. In Count I, Levitt is a defrauded purchaser of stock of the bank and purchased the stock in reliance on the misrepresentation of the Bank.

■ A plaintiff's involvement in litigation against the corporation flaws his ability to honor his fiduciary obligations as a derivative plaintiff acting on the corporation's behalf. *See Darrow v. Southdown, Inc.*, 574 F.2d 1333 (5th Cir.) *cert. denied sub nom. Mize v. Darrow*, 439 U.S. 984, 99 S.Ct. 574, 58 L.Ed.2d 655 (1978). *Blum v. Morgan Guaranty Trust Co.*, 539 F.2d 1388 (5th Cir.1976). In a similar action to the one presented in this case, a district court held that a plaintiff could not bring both a class action and a derivative action. *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93 (S.D.N.Y.1972).

■ The plaintiff, however, correctly argues that the conflict in bringing both a derivative and class action is theoretical rather than real. *Keyser v. Commonwealth National Financial Corp.,* 120 F.R.D. 489 (M.D.Pa.1988):

> The theoretical distinction between individual and derivative stockholder suits ... is just that, a theoretical one, not rooted in the realities of most individual and derivative suits, which usually are equally contingent upon the proof of the same nucleus of facts.

*Keyser,* 120 F.R.D. at 492. The court in *Keyser* looked beyond the "surface duality" and determined when an "actual conflict" exists between the derivative action and the class action. Plaintiff asserts that there is no conflict because the class action will benefit the class, while the derivative suite will compensate the Bank. Although there may well prove to be an actual conflict (in which case the court can take appropriate action), the court determines that no conflict exists at this stage in the proceedings.

### D. Demand Requirement and Futility

The defendants assert that the derivative plaintiff has failed to demand upon the defendants to have their complaints satisfied. It is argued that Rule 23.1 requires that the complaint allege with particularity the efforts to obtain satisfaction from the directors or other authority and the reasons for failing to do so. The showing required to excuse the demand requirement is a rigorous one. *Clark v. Lomas & Nettleton Financial Corp.,* 625 F.2d 49, 54 n. 5 (5th Cir.1980). Rule 23.1 requires the derivative plaintiff to set forth the exceptional circumstances why demand would be futile. *See Kaster v. Modification Systems, Inc.,* 731 F.2d 1014, 1018 (2d Cir. 1984). Allegations of participation of acquiescence by the majority of the board of directors of a corporation are sufficient to establish futility of demand. *Liboff v. Wofson,* 437 F.2d 121 (5th Cir.1971).

State law governs the issues dealing with the pre-suit demand requirement and the actions by the board of directors. *Burks v. Lasker,* 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979). Before a shareholder is permitted to bring a derivative suit, he should show that he has exhausted all means within the corporation itself to redress his grievances. *Orlando Orange Groves Co. v. Hale,* 107 Fla. 304, 144 So. 674 (1932). Demand is excused when the directors "whether by reason of hostile interest or guilty participation in the wrongs complained of, cannot be expected to institute suit, or if they do, it is apparent they will not be the proper parties to conduct the litigation." *Id.* 144 So. at 678 (citing *Sohland v. Baker,* 141 A. 277, 281–82 (Del. 1927)).

General allegations of wrongful refusal to sue are insufficient. *James Talcott, Inc. v. McDowell,* 148 So.2d 36, 38 (Fla. 3d DCA 1962). Since Florida courts have turned to Delaware for guidance, Delaware case law is relevant. The existence of demand futility is based on a two prong test: 1) the directors are disinterested and independent; and 2) the challenged transaction was otherwise the product of a valid exercise of business judgment. *See Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984).

■ The plaintiff has demonstrated to the court that demand would be futile. Plaintiffs persuasively argue that the directors participated in the wrongs complained of and could not be expected to institute a law suit. See complaint paragraphs 44 and 46. Plaintiff alleges that the officers and directors' liability insurance policy contains a provision which prohibits the board from instituting or authorizing any suit on behalf of the Bank against an officer or a director. Insurance coverage would cease if such a suit were brought or authorized by the Bank or the directors. See complaint para 46(d). Where controlling shareholders are named as directors, the demand futility is presumed. *Clark v. Lomas & Nettleton Financial Corp.,* 625 F.2d 49, 53 (5th Cir. 1980). Here the inside directors control over 40% of the total voting power.

### E. Posting Security for Expenses

The defendants assert that in derivative actions the plaintiff must post security for

expenses and has failed to do so. If the plaintiff or plaintiffs hold less than 5% of the outstanding shares, the court may require the plaintiff to give security for the reasonable expenses which may be incurred by the corporation in connection with the action and by the other parties defendant for which the corporation may be legally liable, unless the value of the plaintiff's stock exceeds $50,000. Fla.Stat. sec. 607.147(3). The statute applies to pendent state law claims brought in federal court. *See, e.g., Phelps v. Burnham,* 327 F.2d 812 (2d Cir.1964). The plaintiff in this case has held stock worth about $5,500 to $60,000 at various times. *Cf. Bateson v. Magna Oil Corp.,* 414 F.2d 128, 131 (5th Cir.1969) (long term shareholder is appropriate derivative plaintiff).

The plaintiff correctly argues that security is not obligatory, unless ordered by the court. Security is required only upon motion of the defendants. *Leppert v. Lakebreeze Homeowners Assoc., Inc.,* 500 So.2d 250, 251 (Fla.App.1986). The defendants may by proper motion request that security be posted and brief the court on the necessity of such a posting.

Having considered the motion and heard oral argument, it is

ORDERED AND ADJUDGED that the motion to dismiss be denied. The defendants shall have 30 days from the date of this order to answer. The stay on discovery is lifted. This court shall be referring discovery to the Magistrate by a separate order. The defendants shall also have 30 days from the date of this order to respond to the plaintiff's motion to certify a class.