COHEN, J.
Highway 46 Holdings, LLC (“Highway 46”), appeals from the trial court’s non-final order refusing to dissolve a temporary injunction entered in an action filed by Highway 46 against two of its members, Michael and Jacqueline Myers (“the Myerses”). The Myerses filed a counterclaim to the action below and cross-appeal from the same order.[1] Highway 46 and the Myerses challenge the validity of the injunction as to the other, as well as the trial court’s decision to forgo the imposi *218 tion of an injunction bond. We affirm in part, reverse in part, and remand for a new bond hearing.
The dispute in this case stems from a joint venture between sophisticated businesspersons, the Myerses and Donald and Glenda Hachenberger (“the Hachenber-gers”). The Myerses partnered with the Hachenbergers to develop an entertainment complex consisting of several bars, a restaurant, a sound stage, and a smokehouse. The Myerses owned the real property upon which they planned to develop the project. They also possessed, among various other assets, between $1 and $4 million in collectible memorabilia, some of which they planned to incorporate, to some degree, in the project. The memorabilia included a range of items, from antique motor vehicles to vintage gas station pumps, signs and trinkets known as “pe-trobilia.” As for the Hachenbergers, they provided cash and financing for the venture. The parties came together to form and own in equal shares a holding company to shield the project’s assets and receive its profits, creating Highway 46.
As the project was being developed, the memorabilia was stored on the project site in various warehouses leased by Highway 46. The memorabilia was inventoried for insurance purposes; however, title to the motor vehicles was never transferred to Highway 46. Commingled within the growing memorabilia collection were other items, including the Myerses’ household furniture, children’s toys, tools and family heirlooms. At some point, relations between Michael Myers and Donald Hachen-berger deteriorated. Eventually, Donald Hachenberger terminated Michael Myers’ employment with Highway 46 and had him removed from the premises. He also changed the locks on the buildings and warehouses containing the memorabilia.
Pursuant to certain agreements executed by the parties, Highway 46 filed an action against the Myerses and Southeast Communications Company of Central Florida, Inc., for breach of contract and specific performance.[2] Specifically, Highway 46 sought the transfer of the titles to the motor vehicles and a liquor license. The Myerses filed an answer with affirmative defenses and counterclaims against Highway 46, the Hachenbergers, and an attorney involved in the transaction, alleging, inter alia, fraud and wrongful conversion of their personal property and the memorabilia. The Myerses requested declaratory, injunctive and equitable relief, including access to the project site and the return of the memorabilia and personal property.
After several confrontations erupted between the parties at the project site, Highway 46 filed a verified emergency motion for temporary injunctive relief. With the motion, Highway 46 sought to enjoin Michael Myers from coming near Donald Ha-chenberger, from entering the property site, and from removing, destroying or encumbering the memorabilia and related property. The Myerses responded in kind with an amended verified emergency motion for temporary injunctive relief. With it, they sought the return of the memorabilia and personal property, or, alternatively, that the items be secured and maintained at the project site and warehouses. They also sought unfettered access to the premises and protection from Donald Hachen-berger.
After an evidentiary hearing before a special master at which both parties pre *219 sented witness testimony and other evidence, the special master recommended the following terms for a temporary injunction: Michael Myers and Donald Ha-chenberger were to refrain from coming into physical contact with one another; the memorabilia and related personal property were to remain with the Hachenbergers and Highway 46, who were to “secure and safeguard all antique cars, memorabilia, petrobilia, and other personal property and fixtures previously or currently belonging to the Myerses”; the memorabilia could not be sold, alienated, transferred or disposed of pending final resolution of the suit; the items could not be removed from the warehouses; and the Myerses were entitled to “reasonable access” to the premises and to the memorabilia due to their ownership interests and the possibility of property depreciation. The special master then established the parameters of the Myerses’ — and in the interests of fairness, the Hachenbergers’ — reasonable access to the property, which included a requirement that the party seeking access give the other advance notice before viewing the items. The non-viewing party was also required to be present at the viewing of the memorabilia by the other. The Hachenbergers were permitted to retain control over access to the restaurant property and warehouses, and hire a security detail to guard the premises. The trial court adopted the special master’s recommendation, and neither party appealed from this order.
At separate times and within one year of the trial court’s order, Highway 46 sought to dissolve the temporary injunction, and, alternatively, both parties sought to have an injunction bond posted pursuant to Florida Rule of Civil Procedure 1.610. At a hearing on the motions, Donald Hachen-berger testified as to the change in circumstances surrounding Highway 46’s business. He claimed Highway 46 was operating at a $20,000 deficit each month, $10,000 of which was attributable to the costs of storing the memorabilia. Michael Myers testified as to the circumstances surrounding the business venture and the memorabilia. Ultimately, both sides sought full possession and control of the memorabilia. In the event the court did not lift the injunction, each argued that the other had to post an injunction bond, as it was agreed that the law required a bond be posted. Due to the relief each thought the other was receiving under the injunction, however, the parties hotly contested who was enjoined and who benefited under the terms of the injunction.
At the conclusion of the hearing, the trial court noted that Highway 46 would likely prevail on the underlying merits of the case, and that the injunction benefited both parties. The court initially held that the Myerses would have to post a $50,000 bond (half the storage fees for ten months), but decided to forgo a bond upon further deliberation. The court stated that both parties originally requested the temporary injunction, and that it still served to preserve the status quo. In its written order, the court modified the injunction to the extent that Highway 46 was permitted to transfer to the Myerses possession of the memorabilia — along with the burden of paying the related storage costs — if it so desired.[3] Both parties appealed from this order.
Highway 46 and the Myerses effectively raise two issues on appeal. First, both argue that the trial court erred in continuing the temporary injunction be *220 cause the injunction was improperly entered ab initio. Both assert that the original order entering the injunction, and the order denying the motion to dissolve it, were without the factual findings necessary to support the grounds for a temporary injunction to the extent it benefited the other. To buttress their claims, the parties refer to the trial court’s specific findings — or lack thereof — that expressly relate to the grounds for temporary injunctions.
Generally, a temporary injunction may be obtained either ex parte and without notice to the adverse party pursuant to heightened procedural requirements, or after the adverse party has received notice and a hearing. Fla. R. Civ. P. 1.610(a)(1), (2). A temporary injunction is an extraordinary remedy, to be granted sparingly and only after the moving party establishes the following criteria: “(1) the likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) a substantial likelihood of success on the merits; and (4) consideration of the public interest.” Colonial Bank, N.A. v. Taylor Morrison Servs., Inc., 10 So.3d 653, 655 (Fla. 5th DCA 2009). Upon entering an injunction, the trial court must specify the reasons for the injunction and, in reasonable detail, the acts restrained. Fla. R. Civ. P. 1.610(c).
Once entered, a party seeking relief from the injunction may choose to file a direct appeal from the injunction order within thirty days of rendition under Florida Rule of Appellate Procedure 9.130(a)(3)(B), or a motion to dissolve the injunction at any time under Florida Rule of Civil Procedure 1.610(d). The procedural posture chosen by the party has a direct effect on whether an appellate court can conduct a plenary review of the matter. As explained by this Court in Thomas v. Osler Medical, Inc., 963 So.2d 896 (Fla. 5th DCA 2007):
In cases where the enjoined party takes a direct appeal from an ex parte injunction and does not file a motion to dissolve, in which instance there obviously is no factual record to be reviewed on appeal because there has been no evidentiary hearing, the appellate court is constrained to review only the legal sufficiency of the order, the complaint, and any supporting documents. Hence, the appellate court may not address the factual basis for issuance of the injunction. In such instances, a motion to dissolve and an evidentiary hearing are necessary to make a factual record that an appellate court can review. If a motion to dissolve an ex parte temporary injunction is filed and a hearing on the motion is held, the party who obtained th'e injunction bears the burden of going forward with evidence to establish a pri-ma facie case to support the injunctive relief, and the appellate court may review the factual basis for the injunction.
If the enjoined party takes a direct appeal after notice and a hearing without moving to dissolve, an appellate court may consider the underlying factual matters because there is a record of the evidence and testimony presented upon which the trial court based its decision to grant the temporary injunction.
To summarize, a motion to dissolve is necessary only where an ex parte temporary injunction was issued. If proper notice was provided and an evidentiary hearing conducted prior to issuance of the temporary injunction, an appeal should he filed to review the propriety of the temporary injunction; in this instance, a motion to dissolve is limited to raising only new matters and a trial court will not abuse its discretion in denying the motion if the enjoined par *221 ty does not establish that a change in conditions justifies dissolution.
963 So.2d at 900 (footnote, quotation and citations omitted) (emphasis added).
Accordingly, as explained in Thomas, “[w]hen a motion to dissolve is directed to a temporary injunction after notice and a hearing, the moving party must establish that a change in conditions justifies the dissolution.” Id. at 899 (emphasis added). The alleged change must be different from what was raised or could have been raised at the contested hearing on the initial request for the injunction. Courts will dissolve the injunction only “where the facts have changed to the point that equity dictates the injunction is no longer needed.” Id. (quotation omitted). Accord Hunter v. Dennies Contracting Co., 693 So.2d 615, 615-16 (Fla. 2d DCA 1997) (affirming lower court’s refusal to dissolve or modify injunction after noticed hearing because motion “merely sought to have the judge reconsider his initial ruling,” and movant failed to prove change in circumstances); Brock v. Brock, 667 So.2d 310, 312 (Fla. 1st DCA 1995) (reversing order unfreezing assets because circumstances had “not altered in a manner that would justify releasing possible assets of the estate.”).
Here, neither party filed an appeal from the original injunction order entered after notice and a hearing. Thus, the sufficiency of the original, un-appealed injunction order is not before this Court for review. Instead, Highway 46 filed a motion to dissolve the injunction, and as a consequence, it was required to show a change in circumstances to the point equity dictated the injunction was no longer needed. The company succeeded in showing a change to the extent the injunction was modified, but failed to persuade the trial court to dissolve the injunction. Highway 46’s corollary argument that dissolution was the only reasonable conclusion to be drawn from the change in circumstances is unsupported and impermissibly invites this Court to substitute its judgment for that of the lower court. Cf. Cunningham v. Dozer, 159 So.2d 105 (Fla. 3d DCA 1963); see also Meyers v. Club at Crystal Beach Club, Inc., 826 So.2d 1086, 1089 (Fla. 5th DCA 2002) (providing trial court has wide discretion to either grant, deny, dissolve, or modify injunctions). As such, the trial court did not err in refusing to revisit the original injunction order, or abuse its discretion in modifying the injunction so as to provide Highway 46 an opportunity to avoid further storage fees. Therefore, the trial court’s decision to keep the temporary injunction in place as modified is affirmed.
As to the second issue raised, both Highway 46 and the Myerses claim the trial court erred because the other should have been required to post an injunction bond. We hold that the trial court erred in failing to require both parties to post bonds.
Temporary injunctions are governed by Florida Rule of Civil Procedure 1.610(b), which provides:
No temporary injunction shall be entered unless a bond is given by the movant in an amount the court deems proper, conditioned for the payment of costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined. When any injunction is issued on the pleading of a municipality or the state or any officer, agency, or political subdivision thereof, the court may require or dispense with a bond, with or without surety, and conditioned in the same manner, having due regard for the public interest. No bond shall be required for issuance of a temporary injunction issued solely to pre *222 vent physical injury or abuse of a natural person.
(Emphasis added). Outside the exceptions listed in the rule, the easelaw is clear that the trial court cannot waive the requirement for bond or set a nominal amount. Bellach v. Huggs of Naples, Inc., 704 So.2d 679, 680 (Fla. 2d DCA 1997); see also Fla. High Sch. Activities Ass’n v. Mander ex rel. Mander, 932 So.2d 314, 315-16 (Fla. 2d DCA 2006) (“An injunction is defective if it does not require the movant to post a bond.”); Image Data, L.L.C. v. Sullivan, 739 So.2d 725, 727 (Fla. 5th DCA 1999) (finding reversible error where injunction was entered without bond).
Bond must be set after both parties have had the opportunity to present evidence regarding the proper amount. Bellach, 704 So.2d at 680. The trial court must have some basis for the exercise of its discretion in setting the bond amount, which is typically the evidence provided to the court by the parties. AOT, Inc. v. Hampshire Mgmt. Co., 653 So.2d 476, 478 (Fla. 3d DCA 1995). Peculiar or extraordinary circumstances may justify a court’s decision to impose a bond in an amount that varies from the evidence. See Supinski v. Omni Healthcare, P.A., 853 So.2d 526, 532 (Fla. 5th DCA 2003) (remanding bond amount for hearing to determine whether parties stipulated to amount set); Cushman & Wakefield, Inc. v. Cozart, 561 So.2d 368, 369 (Fla. 2d DCA 1990) (cautioning, where $10 bond was imposed, “Before a trial court sets a bond below the range of anticipated costs and damages, the trial judge should be very confident that this extraordinary decision is completely appropriate under the circumstances of the case.”).
The purpose of an injunction bond is to provide sufficient funds to cover the adverse party’s costs and damages if the injunction is wrongfully issued.[4] Longshore Lakes Joint Venture v. Mundy, 616 So.2d 1047, 1047 (Fla. 2d DCA 1993). “[T]he court may consider factors other than anticipated costs and damages in setting a bond, including the adverse party’s chances of overturning the temporary injunction. However, damages recoverable for wrongfully obtaining an injunction are limited to the amount of the injunction bond.” Id. (citation omitted); see also § 60.07, Fla. Stat. (2011). In Parker Tampa Two, Inc. v. Somerset Development Corp., 544 So.2d 1018, 1021 (Fla.1989), the supreme court explained the rationale for limiting the wrongfully enjoined party’s damages to the amount of the bond:
Limiting liability to [the] bond amount thus provides an orderly step-by-step procedure whereby all parties can be continually apprised of the consequences of their actions. To hold the obtaining party fully liable would in many cases expose the party to potentially staggering consequential damages difficult or impossible to project. The public policy encouraging fair access to the courts for those who are in good faith pursuit of their equitable rights must be protected from the deterrent certain to be posed by unknown liability for mistake.
Limiting liability to the bond amount can also be viewed as an equitable way of apportioning liability between the two entities generally at fault in the issuance of a wrongful injunction, i.e., the obtaining party and the court. The obtaining party often is at fault for asking the court to act hastily, requiring it to dispense with normal procedural safeguards. The court, on the other hand, at times simply misreads or misapplies the law independent of any time constraint imposed upon it by the obtaining *223 party. Limiting liability to the bond amount strikes a median between holding the court fully liable (in which case no recovery could be had), and holding the obtaining party fully liable.
Id. (footnote and citation omitted). Consequently, in the event no bond is posted, the wrongfully enjoined party, if any, is without recourse as to damages stemming from the wrongful injunction.[5] See, e.g., Ross v. Champion Computer Corp., 582 So.2d 152, 153 (Fla. 4th DCA 1991) (finding appellant would be unable to collect damages where no bond was posted and reversing for trial court to consider enforceability of no-bond clause in contract).
The circumstances of this case, where two private parties moved for and received injunctive relief without initially requesting the other post bond, do not warrant a waiver of the bond requirement of Rule 1.610(b). With no bonds in place, neither party would be able to collect any damages if either was found to be wrongfully enjoined. Accordingly, the trial court’s decision to forgo the bond is reversed and the matter is remanded to the trial court for a new bond hearing.[6] See Advantage Digital Sys., Inc. v. Digital Imaging Servs., Inc., 870 So.2d 111, 117 (Fla. 2d DCA 2003).
AFFIRMED in part, REVERSED in part, REMANDED for a new bond hearing.
GRIFFIN and EVANDER, JJ„ concur.

. In Myers v. Highway 46 Holdings, L.L.C., 65 So.3d 58 (Fla. 5th DCA 2011), this Court reversed the trial court’s dismissal of the counterclaim with prejudice. The reply brief and answer to the cross-appeal in this case notes that the Myerses had no claims for relief pending as of October 2011. It is unknown whether a new counterclaim has been filed.

. Southeast Communications was Jacqueline Myers’ wholly owned company which held a liquor license to be used in the project.

. Following the order, the Myerses eventually took possession of some but not all of the memorabilia.

. The bond may include attorney’s fees directly related to dissolving the injunction. Braun v. Intercont'l Bank, 452 So.2d 998, 999 (Fla. 3d DCA 1984).

. There are exceptions to this rule. Actual damages from the wrongful injunction are awarded when the injunction was sought in bad faith. Parker Tampa Two, Inc., 544 So.2d at 1020. Also, where the court dispenses with the bond requirement for cities pursuant to rule 1.610(b), the enjoined party is entitled to the full measure of damages. Provident Mgmt. Corp. v. City of Treasure Island, 718 So.2d 738, 739 (Fla.1998).

. As to the Myerses’ request for bond, the trial court is to first determine whether bond was sought from the appropriate party.