# Supreme Court of Florida

———————

No. SC15-1655

———————

**PLANNED PARENTHOOD OF GREATER ORLANDO, INC., etc.,**
Petitioner,

vs.

**MMB PROPERTIES, etc.,**
Respondent.

[February 23, 2017]

PARIENTE, J.

The conflict issue presented in this case involves the standard for modifying or dissolving a temporary injunction. The Fifth District Court of Appeal "acknowledge[d] conflict with the Third and Fourth District[s]" as to whether a party moving to modify or dissolve a temporary injunction must establish "changed circumstances." Planned Parenthood of Greater Orlando v. MMB Properties, 171 So. 3d 125, 128 & n.3 (Fla. 5th DCA 2015).[1] We conclude that requiring a party to meet the burden of proving changed circumstances even when

———————————————————

1. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

a party shows clear misapprehension of the facts or clear legal error is incompatible with the equity principles underlying injunctive relief and hold that a trial court abuses its discretion in not modifying or dissolving a temporary injunction in such an instance, regardless of whether the movant shows changed circumstances.

After resolving the conflict issue, we also review the temporary injunction entered by the trial court in this case and conclude that the order enjoining Planned Parenthood of Greater Orlando ("Planned Parenthood") from performing certain activities was not based on competent, substantial evidence. Accordingly, we quash the Fifth District's decision below to the extent it affirmed the trial court's temporary injunction. See Planned Parenthood of Greater Orlando, 171 So. 3d at 130-31.

## FACTS AND BACKGROUND

Oak Commons is a medical complex consisting of approximately eleven acres located near the Osceola Regional Medical Center. In 1986, the developer of Oak Commons executed a Declaration of Restrictions ("the Declaration") that was duly recorded and expressly ran with the land. The Declaration covenanted the following:

> The property described herein shall not be used for the following
> activities without the prior written permission of [the developer],
> which shall be granted only in its sole and unfettered discretion,
> unless ancillary and incidental to a physician's practice of medicine:

1. An Outpatient Surgical Center
2. An emergency medical center.
3. A Diagnostic Imaging Center which includes the following radiographic testing: Fluroscopy [sic], Plane Film Radiography, Computerized Tomography (CT), Ultrasound, Radiation Therapy, Mamography [sic] and Breast Diagnostics, Nuclear Medicine Testing and Magnetic Resonance Imaging (MRI).

Planned Parenthood purchased the property located at 610 Oak Commons Boulevard ("Kissimmee Health Center") in December 2013. Respondent, MMB Properties, is a general partnership that has operated a cardiology practice in Oak Commons since 1996. In June 2014, approximately one month before Planned Parenthood opened the Kissimmee Health Center, MMB Properties filed a single-count complaint alleging that Planned Parenthood's use of the property violated the Declaration. The complaint sought a permanent injunction preventing Planned Parenthood from performing outpatient surgical procedures, which MMB Properties alleged included abortions, and from providing emergency medical services, which allegedly included the provision of the "Morning After Pill." The complaint was supported by an affidavit of Dr. John Massey, a cardiologist and one of the general partners of MMB Properties, as well as a zoning verification letter that Planned Parenthood sent to the City of Kissimmee inquiring whether it could operate an "Out Patient Surgical Center" at the Kissimmee Health Center and an application Planned Parenthood submitted to the Florida Agency for Health Care Administration to operate an abortion clinic.

Soon after MMB Properties filed the complaint, MMB Properties moved to temporarily enjoin Planned Parenthood from "performing abortions, providing outpatient surgical services, or providing emergency medical services, including emergency contraception (including administering the 'Morning After Pill'), until this lawsuit is fully resolved on the merits."[2]  Planned Parenthood filed its answer, affirmative defenses, and a memoranda of law in opposition to the complaint and MMB Properties' temporary injunction motion, along with an affidavit of its then-CEO, Jenna Tosh.  Two business days after Planned Parenthood opened the Kissimmee Health Center to the public, the trial court held a hearing on MMB Properties' motion for a temporary injunction.  At the hearing, Ms. Tosh and Martha Haynie, a board member and the treasurer of Planned Parenthood, testified on Planned Parenthood's behalf.  Dr. Massey and Dr. Jose Fernandez, a family physician who actively opposes abortions, testified on behalf of MMB Properties.

Ms. Tosh testified that Planned Parenthood was a nonprofit organization that intended to perform surgical abortions at its then recently opened Kissimmee Health Center.  Ms. Tosh further testified that abortions represent less than one

---

2. The temporary injunction motion was also supported by an affidavit of Dr. Massey, who averred that the performance of abortions at the Kissimmee Health Center was "obnoxious and out of harmony with the rest of the offices in Oak Commons Medical Park."  However, the trial court did not grant the temporary injunction on this basis.

percent of the total number of services Planned Parenthood provides and do not constitute a significant portion of the services Planned Parenthood intended to provide at the Kissimmee Health Center. Rather, Ms. Tosh testified that Planned Parenthood provides all FDA-approved methods of contraception, breast and cervical cancer screenings, and a "whole scope of primary preventative care for women." Ms. Tosh further testified that all of its services, including surgical abortions, could be performed in its building without having a surgical suite.

Testimony during the hearing also adduced that Planned Parenthood employed a salaried medical director, Dr. Merri Morris, a board-certified obstetrician and gynecologist ("OBGYN"), as well as four other licensed physicians who were independent contractors. Ms. Tosh testified that Dr. Morris would soon begin working exclusively for the Kissimmee Health Center. Ms. Tosh also testified that while surgical abortions were routinely referred to as surgery, she did "not agree that surgical abortions entails what is usually thought of as surgery." Additionally, Ms. Tosh testified that Planned Parenthood was independent of the national organization, Planned Parenthood Federation of America.

Ms. Haynie testified that, as treasurer of Planned Parenthood, she was familiar with the costs that the organization incurred in establishing the Kissimmee Health Center. Specifically, Ms. Haynie testified that if Planned Parenthood were

required to move its operations from the Kissimmee Health Center to another location, that process would take approximately eighteen months and cost Planned Parenthood slightly over $700,000 in lost revenue.

Dr. Massey testified that abortion is a surgical procedure and that the Declaration's restrictive covenants applied equally to his practice as it did to Planned Parenthood's. For instance, Dr. Massey testified that his practice could not conduct cardiac catheterizations because they are considered a surgical procedure. Dr. Fernandez testified that surgical abortions are surgical procedures because they involve "instrumentation, a woman usually under some form of anesthesia, and the extraction of bodily fluid and tissues." Approximately one week after the hearing, the trial court granted MMB Properties' motion for a temporary injunction, finding that MMB Properties had a substantial likelihood of showing that performing surgical abortions would violate the Declaration and that such procedures are not incidental to a physician's practice of medicine. Additionally, the trial court enjoined Planned Parenthood from providing sonographic or other diagnostic imaging services such as ultrasounds.

**Post-Temporary Injunction Motion and Supporting Affidavits**

Five days later, Planned Parenthood filed a "Motion to Reconsider, Dissolve, or Modify Order Granting Motion for Temporary Injunction" in the trial court ("motion to modify or dissolve"). The motion alleged that the temporary

injunction was "based on an erroneous reading of the Declaration, and includes several additional errors of law and fact." The motion specifically requested modification of the temporary injunction order "to provide sonograms or other diagnostic imaging services as Plaintiff MMB [Properties] never sought any relief precluding rendition of those services, either in its Complaint or in Plaintiff's Motion for Temporary Injunction." The motion did not acknowledge any change in the underlying facts or law from when the temporary injunction was entered, but argued that the trial court misapprehended the facts as presented to the court during the evidentiary hearing. The motion also sought clarification of what procedures were enjoined by the temporary injunction in addition to prohibiting performing surgical abortions and sonographic or other diagnostic imaging services.

In support of its motion, Planned Parenthood submitted a supplemental affidavit of Ms. Tosh and affidavits of three additional individuals involved with the planning and construction of the Kissimmee Health Center.[3] In response, MMB Properties argued that the motion simply "rehashe[d] testimony already considered" and failed to show a change in facts or circumstances. The trial court

_____

3. The following individuals submitted affidavits: Thomas R. Harbert, the attorney whose firm represented Planned Parenthood in connection with its acquisition of the Kissimmee Health Center; Matthew Harkins, a licensed general contractor who oversaw the planning and renovation of the Kissimmee Health Center; and Dr. Merri Morris, who has been the medical director of Planned Parenthood since September 2012.

summarily denied Planned Parenthood's motion to modify or dissolve the temporary injunction without explanation and without holding a hearing.

## The Fifth District Stay Panel Opinion

Planned Parenthood appealed the temporary injunction and the denial of its motion to modify or dissolve the temporary injunction to the Fifth District. Planned Parenthood also filed an emergency motion seeking to stay the temporary injunction pending the Fifth District's opinion on the appeal. The Fifth District stay panel,[4] in considering the evidence before the trial court at the time of the temporary injunction order as well as the supplemental affidavits, concluded that "the trial court erred as a matter of law when it enjoined Planned Parenthood from providing sonographic and other diagnostic imaging services because MMB never requested this relief in its pleadings or in its motion for temporary injunction." Planned Parenthood of Greater Orlando. v. MMB Properties, 148 So. 3d 810, 812 (Fla. 5th DCA 2014). The stay panel also concluded:

> Planned Parenthood is likely to succeed on the merits regarding the portion of the injunction that prevents it from providing surgical procedures. The Declaration of Rights allows surgery to occur in the Oak Commons Medical Center so long as it is "ancillary and incidental to a physician's practice of medicine." The trial court found that Planned Parenthood is not a "physician's practice" because it is a § 501(c)(3) tax-exempt nonprofit organization. Simply because an organization chooses to obtain nonprofit status does not mean that it is not a physician's practice. The trial court's other findings with

---

4. The stay panel consisted of Judges Evander, Cohen, and Lambert.

respect to this issue are similarly unsupported by the record. When examining the record as a whole, including the affidavits Planned Parenthood filed in support of its motion for rehearing, there is a likelihood that Planned Parenthood will prevail on appeal, either because it is not an Outpatient Surgical Center or, even if it is, the surgeries it performs are ancillary to a "physician's practice."

Id. Lastly, the stay panel noted that "Planned Parenthood has sufficiently proved that it will suffer harm absent a stay." Id.

## The Fifth District Merits Panel Opinion

On appeal, a different panel of the Fifth District reversed the stay panel, holding that the stay panel should not have considered the affidavits filed in connection with the motion to modify or dissolve the temporary injunction.[5] Planned Parenthood, 171 So. 3d at 128. The Fifth District, addressing the trial court's denial of Planned Parenthood's motion to modify or dissolve the temporary injunction, stated that Planned Parenthood "needed to establish changed circumstances which it did not do," and acknowledged conflict with the Third and Fourth District Courts of Appeal. Id. at 128 & n.3 (citation omitted).

Addressing the merits of the temporary injunction order, the Fifth District construed the Declaration de novo and concluded that the restrictive covenant at issue "prohibits the property from being used as an outpatient surgical center, the

_____

5. The merits panel consisted of Judges Lawson, Palmer, and Evander. Judge Evander concurred in part and dissented part.

- 9 -

common and ordinary meaning of which is a facility or place for, or for the purpose of, performing outpatient surgical procedures." Id. at 130. Based on this construction, the Fifth District concluded that the trial court's factual findings were supported by competent, substantial evidence, including its finding that Planned Parenthood's "performance of abortions was not ancillary or incidental" to Planned Parenthood's physician's practice of medicine. Id. Accordingly, the Fifth District affirmed in part the temporary injunction enjoining Planned Parenthood from performing abortions at the Kissimmee Health Center. Judge Evander, who sat on both panels, contested the conclusion, based on the limited evidence before the temporary injunction hearing, "that MMB met its burden of showing a substantial likelihood of success on the merits." Id. at 133 (Evander, J., concurring in part, dissenting in part).

Planned Parenthood sought discretionary jurisdiction in this Court based on the acknowledged conflict regarding the changed circumstances requirement and moved the Fifth District to stay issuance of the mandate. After the Fifth District denied the motion, Planned Parenthood moved this Court to review the denial. We granted jurisdiction and stayed the proceedings below pending disposition of this case.

**ANALYSIS**

## I. The Changed Circumstances Requirement when Moving to Modify or Dissolve a Temporary Injunction

As this Court acknowledged long ago, the purpose of a temporary injunction is to preserve the status quo while final injunctive relief is sought. See Sullivan v. Moreno, 19 Fla. 200, 215 (1882); see also Grant v. Robert Half Intern., Inc., 597 So. 2d 801, 801-02 (Fla. 3d DCA 1992) ("The purpose of a temporary injunction is not to resolve a dispute on the merits, but rather to preserve the status quo until the final hearing when full relief may be granted."). A temporary injunction is provisional by nature. Thus, once a temporary injunction order is entered and pending a trial on the final injunctive relief sought, a party may seek to modify or dissolve the temporary injunction pursuant to Florida Rule of Civil Procedure 1.610(d), which provides:

> A party against whom a temporary injunction has been granted may move to dissolve or modify it at any time. If a party moves to dissolve or modify, the motion shall be heard within 5 days after the movant applies for a hearing on the motion.

The party moving to dissolve or modify a temporary injunction entered after notice and a hearing bears the burden of proof. See Orlando Orange Groves Co. v. Hale, 144 So. 674, 676 (Fla. 1932). The Florida Rules of Civil Procedure, however, do not specify that the party carrying the burden must demonstrate "changed circumstances" or "changed conditions" when moving to dissolve or

modify a temporary injunction pursuant to rule 1.610(d). Despite the absence of

such a requirement in the Florida Rules of Civil Procedure, the First, Second,

Third, and Fifth District Courts of Appeal all require such a threshold showing.

See Brock v. Brock, 667 So. 2d 310, 311-12 (Fla. 1st DCA 1995); Hunter v.

Dennies Contracting Co., 693 So. 2d 615, 616 (Fla. 2d DCA 1997); Fong v.

Courvoisier Courts Condo. Ass'n, Inc., 81 So. 3d 562, 563 (Fla. 3d DCA 2012);

Highway 46 Holdings, LLC v. Myers, 114 So. 3d 215, 221 (Fla. 5th DCA 2012).

The Fourth District, however, has rejected this rigid application of the

changed circumstances rule. See Minty v. Meister Fin. Grp., Inc., 132 So. 3d 373,

376 (Fla. 4th DCA 2014); Precision Tune Auto Care, Inc. v. Radcliff, 731 So. 2d

744, 745 (Fla. 4th DCA 1999). As the Fourth District explained in Precision Tune

Auto Care, Inc.:

> We do not agree . . . that a trial court cannot grant a motion to
> dissolve a temporary injunction where the arguments or evidence in
> support of the motion to dissolve could have been raised at the hearing
> on the temporary injunction. Such a bright line rule would, in our
> opinion, be inconsistent with two well-established principles. First,
> the "granting and continuing of injunctions rests in the sound
> discretion of the Court, dependent upon surrounding
> circumstances." Davis v. Wilson, 190 So. 716, 718 (Fla. 1939) and
> cases cited. Second, a trial court has the inherent authority to
> reconsider a non-final order and modify or retract it. Hunter v.
> Dennies Contracting Co., 693 So. 2d 615 (Fla. 2d DCA 1997). See
> also N. Shore Hosp., Inc. v. Barber, 143 So. 2d 849 (Fla. 1962).
> We conclude that a trial court's decision as to whether to
> reconsider, on a motion to dissolve, a temporary injunction entered
> after notice and a hearing, is discretionary, regardless of whether the
> arguments or evidence could have been brought to the attention of the

court at the hearing on the injunction. Although the opinion in <u>Hunter</u> observed that it was incumbent on the party moving to dissolve the temporary injunction to demonstrate a change of circumstance, the court also recognized that the trial court's decision not to reconsider was discretionary.

731 So. 2d at 745-46 (footnote omitted). Thus, as the Fourth District recognized, establishing changed circumstances as a threshold requirement before a trial court may modify or dissolve a temporary injunction is at odds with this Court's longstanding maxim that "[w]ide judicial discretion rests in the court in the granting, denying, dissolving, or modifying injunctions." <u>Shaw v. Palmer</u>, 44 So. 953, 954 (Fla. 1907).

A temporary injunction is an equitable remedy. As we have explained, "a court of equity is a court of conscience; it 'should not be shackled by rigid rules of procedure and thereby preclude justice being administered according to good conscience.' " <u>Wicker v. Bd. of Pub. Instr. of Dade Cty.</u>, 106 So. 2d 550, 558 (Fla. 1958) (quoting <u>Degge v. First State Bank of Eustis</u>, 199 So. 564, 565 (Fla. 1941)). Also "[i]nherent in equity jurisprudence is the doctrine that equity will always move to prevent an injustice engendered by fraud, accident or mistake." <u>Hedges v. Lysek</u>, 84 So. 2d 28, 31 (Fla. 1955). Because "[a] motion to dissolve an injunction involves the sufficiency of the equities of the complaint to justify the injunction in the first instance . . . if it appears that the injunction should not have been granted, it should be dissolved." <u>Coastal Unilube, Inc. v. Smith</u>, 598 So. 2d 200, 201 (Fla.

4th DCA 1992). Thus, requiring a threshold showing of changed circumstances when moving to modify or dissolve a temporary injunction is incompatible with equity principles when a party shows clear misapprehension of the facts or clear legal error on the part of the trial court in entering the temporary injunction.

In this case, the temporary injunction order granted relief that was never sought or tried, was vague in its description of the activity enjoined, Planned Parenthood, 171 So. 3d at 127, and, as Planned Parenthood's motion to modify or dissolve alleged, was based on erroneous factual findings. In short, the temporary injunction in this case frustrated the status quo, rather than preserved it, and denial of the motion to modify or dissolve the temporary injunction necessarily thwarted the preservation of the status quo. Accordingly, we hold, just as a trial court's denial of a motion to modify or dissolve a temporary injunction when changed circumstances is shown is an abuse of discretion, denial of a motion to modify or dissolve is also an abuse of discretion where a party can demonstrate clear legal error or misapprehension of facts on the part of the trial court. Therefore, we reject the bright line changed circumstances rule for modifying or dissolving a temporary injunction as articulated by the First, Second, Third, and Fifth Districts.

## II. The Temporary Injunction Order

Planned Parenthood next requests this Court's review of the Fifth District's decision affirming in part the trial court's temporary injunction order in this case.

"Although this issue was not the basis of conflict jurisdiction, once the Court grants jurisdiction, it may, in its discretion, address other issues properly raised and argued before the Court." State v. T.G., 800 So. 2d 204, 210 n.4 (Fla. 2001). Mindful that the temporary injunction proceeding in this case has spanned more than two years, and in order to bring judicial resolution of this protracted temporary injunction proceeding, we exercise our discretion to consider whether the Fifth District erred in affirming in part the trial court's order temporarily enjoining Planned Parenthood from performing abortions at its Kissimmee Health Center, an issue that the parties have raised and extensively argued before this Court.

While this Court must accept a trial court's findings of fact if supported by competent, substantial evidence, we may nevertheless review the Fifth District's review of those legal conclusions de novo and review the Fifth District's conclusions regarding the legal sufficiency of the evidence supporting the trial court's factual findings. See Naegle Outdoor Advert. Co. v. City of Jacksonville, 659 So. 2d 1046, 1046-47 (Fla. 1995). Although a trial court has wide discretion in reviewing a temporary injunction, the trial court's factual determinations must be supported by competent, substantial evidence. Concerned Citizens for Judicial Fairness v. Yacucci, 162 So. 3d 68, 72 (Fla. 4th DCA 2014).

Our review of the temporary injunction order, however, does not take into consideration the supplemental affidavits Planned Parenthood submitted to the trial court in support of its motion to dissolve or modify the temporary injunction. Rather, we consider only the evidence before the trial court at the time it entered its temporary injunction order.

**Trial Court's Factual Findings Supporting Temporary Injunction**

The temporary injunction at issue concerns the enforcement of the Declaration. The Declaration states:

> The property described herein shall not be used for the following activities without the prior written permission of [the developer], which shall be granted only in its sole and unfettered discretion, <u>unless ancillary and incidental to a physician's practice of medicine</u>:
>
> 1. <u>An Outpatient Surgical Center</u>.
> 2. An emergency medical center.
> 3. A Diagnostic Imaging Center which includes the following radiographic testing: Fluroscopy [sic], Plane Film Radiography, Computerized Tomography (CT), Ultrasound, Radiation Therapy, Mamography [sic] and Breast Diagnostics, Nuclear Medicine Testing and Magnetic Resonance Imaging (MRI).

(Emphasis added.) None of the terms in the Declaration are defined. At the outset, we agree with the Fifth District's interpretation of the Declaration as "prohibit[ing] the property from being used as an outpatient surgical center," which "is a facility or place for, or for the purpose of, performing outpatient surgical procedures." <u>Planned Parenthood</u>, 171 So. 3d at 130. Therefore, we are left to determine whether Planned Parenthood may perform surgical abortions under the

- 16 -

Declaration's exception, which provides that outpatient surgical procedures may be performed so long as they are "ancillary and incidental to a physician's practice of medicine."

The trial court concluded that Planned Parenthood "is not a 'physician's practice' as that term is defined in the Declaration[]," and, therefore, the Declaration's exception for uses that are "ancillary and incidental to a physician's practice of medicine," did not apply. This conclusion was based on the trial court's findings that Planned Parenthood is a 501(c)(3) tax-exempt nonprofit organization and "many of [Planned Parenthood's] services fall well beyond the traditional ambit of a 'physician's practice of medicine,' " because Planned Parenthood "is heavily involved with various educational, advocacy, and community outreach activities in furtherance of its mission as a nonprofit corporation."

Planned Parenthood correctly notes, however, that the Declaration does not define "physician's practice." Further, the record does not reveal any testimony or other evidence that could support the trial court's finding that Planned Parenthood "is heavily involved with various educational, advocacy, and community outreach activities in furtherance of its mission as a nonprofit corporation." In fact, Planned Parenthood's CEO, Ms. Tosh, testified that Planned Parenthood was not involved with educational, advocacy, and community outreach activities:

Planned Parenthood of Greater Orlando is an independent non-profit organization with our own staff and our own—we carry an independent budget. And Planned Parenthood Federation of America is the national arm. There are 68 Planned Parenthood affiliates in the United States that voluntarily affiliate with Planned Parenthood Federation of America. Planned Parenthood Federation is also our accrediting agency and provides guidance and consultation on a wide range of issues for affiliates.

The trial court also concluded that Planned Parenthood could not be a "physician's practice" because Planned Parenthood "just recently hired a physician as a medical director. The medical director currently works one day a week in Jacksonville for another affiliate of Planned Parenthood Federation of America and spends some time each week at [Planned Parenthood's] other two Orlando-area locations." However, Ms. Tosh testified at the initial temporary injunction hearing that Planned Parenthood employed a medical doctor, who Planned Parenthood had "access to . . . at all times."

Accordingly, the trial court's finding that Planned Parenthood is not a "physician's practice" is unsupported by competent, substantial evidence. The trial court concluded, however, that even if Planned Parenthood could be considered a "physician's practice," its "intended violative uses are neither 'ancillary' nor 'incidental' sufficient to bring them within the exception," because Planned Parenthood's witnesses, Ms. Tosh and Ms. Haynie, testified that abortions were a "substantial" and "central" Planned Parenthood service.

The trial court acknowledged that Ms. Tosh asserted in her affidavit that "surgical abortions are expected to comprise less than 1% of [Planned Parenthood's] services," but found "this asserted statistic is offered out of context in light of the totality of the evidence." This finding is also unsupported by competent, substantial evidence. There was no evidence before the trial court prior to its entry of the temporary injunction regarding the number of surgical abortions likely to be performed, except for Ms. Tosh's statement that the number of surgical abortions performed would likely constitute approximately one percent of Planned Parenthood's activities and "would also likely constitute a very small percentage of the total services provided at the Kissimmee Health Center." Indeed, cross-examination of Ms. Tosh during the temporary injunction hearing reveals the same:

> Q. Where—at the very bottom, you—you affirm under oath that abortions represent less than 1 percent of the total number of services that Planned Parenthood provides; is that right?
>
> A. That's correct.
>
> Q. So is it fair to say, given that it is such a nominal percentage of total services, that if the Court were to say, "Maintain the status quo. Don't start doing abortions until the Court has the chance to have a full hearing on this matter," that Planned Parenthood would not be— its practice, its operation would not be harmed or disrupted? That's true, isn't it?
>
> A. No, it's not true.

Q. So 1 percent constitutes a significant portion of what Planned Parenthood plans to do? No pun intended.

A. We believe in providing reproductive healthcare to our patients. And so any interference in our ability to comprehensively care for our patients would be a substantial burden on our practice.

Further, Ms. Haynie's testimony during the temporary injunction hearing cannot also be construed to support the trial court's factual finding that performing surgical abortions is "central" to Planned Parenthood's physician's practice, but rather central to Planned Parenthood's revenue because revenue from other medical services could be attributable to the performance of surgical abortions:

Q. Ms. Haynie, breaking out the abortions is a—is a false premise, is that correct, because the abortions are central to the rest of the practice that you perform—or that Planned Parenthood of Greater Orlando performs in its facility?

A. That's correct.

Q. In other words, patients that come in for abortions lots of times come back in for lots of other female gynecological services; is that correct?

A. Yes.

Q. And if you don't perform abortions, then those patients never come in?

A. That's correct.

Q. And likewise with patients that you're providing gynecological services for, if you don't provide abortion services and they have need for abortion services, they're more likely to go someplace else, and that revenue would be lost, correct?

A.  That's correct.

Q.  So is that the reason that you find it difficult to break out revenues for abortion services specifically?

A.  I don't think that would be a relevant number.

Neither Ms. Haynie's nor Ms. Tosh's testimony, then, support the trial court's finding that abortions are not ancillary and incidental to Planned Parenthood's physician's practice of medicine.  At best, the testimony relates only to how the performance of surgical abortions affects Planned Parenthood's revenue, not whether the actual performance of surgical abortions was central or an otherwise substantial component of its physician's practice.  Accordingly, the trial court's conclusion that abortions would be "substantial" and "central" to Planned Parenthood's physician practice is simply not supported by competent, substantial evidence in the record.

Regardless of the testimonial supplemental affidavits, we conclude that the trial court erred in granting the temporary injunction because the trial court's conclusions supporting its entry of a temporary injunction order were not based on competent, substantial evidence.  Indeed, the trial court's temporary injunction order at times completely misstated facts adduced during the temporary injunction hearing and, at other times, based factual and legal conclusions on facts not appearing in the record at all, including: Planned Parenthood engaged in advocacy and outreach activities, when testimony adduced at trial indicated that it was

actually the national organization, Planned Parenthood Federation of America, that engaged in these activities; Planned Parenthood recently hired a medical director when it in fact already employed a medical doctor; and that performing abortions would be substantial and central to Planned Parenthood's physician practice when testimony adduced at trial confirmed that the performance of abortions would represent less than one percent of the total number of services Planned Parenthood provides. In addition, as the Fifth District correctly noted, the trial court granted relief that was not requested by "temporarily enjoining Planned Parenthood from performing sonograms." Planned Parenthood, 171 So. 3d at 127.

Because there is a lack of competent, substantial evidence to support the trial court's factual findings and resulting conclusion that MMB Properties was likely to succeed on the merits in the final injunction proceeding, the Fifth District erred in affirming the trial court's conclusion as to this temporary injunction prong. Because the party seeking a temporary injunction must establish that the party has demonstrated a substantial likelihood of success on the merits, and because this prong was not established, this error alone requires that the temporary injunction order be vacated. See Provident Mgmt. Corp. v. City of Treasure Island, 796 So. 2d 481, 485 n.9 (Fla. 2001) (noting the conjunctive elements of a temporary injunction).

- 22 -

## CONCLUSION

Accordingly, we quash in part the Fifth District's decision below that affirmed the trial court's order temporarily enjoining Planned Parenthood from performing abortions at the Kissimmee Health Center and its conclusion that Planned Parenthood "needed to establish changed circumstances" in its motion to modify or dissolve the temporary injunction.  Planned Parenthood, 171 So. 3d at 128.  Because the stay of the temporary injunction has been in effect since the Fifth District issued the stay at the outset of the litigation, the parties will have substantial additional evidence regarding Planned Parenthood's activities and whether they, in fact, violate the Declaration.  We remand this case to the Fifth District with instructions that it be further remanded to the trial court to conduct permanent injunction proceedings.

It is so ordered.

LABARGA, C.J., and LEWIS, and QUINCE, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, J., concurs.
LAWSON, J., recused.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., dissenting.

"[T]he acknowledged conflict," majority op. at 10, on which the majority bases the exercise of express-and-direct-conflict jurisdiction concerns a question— whether the dissolution or modification of a temporary injunction requires a

- 23 -

showing of changed circumstances—that was not presented to the Fifth District for decision and which the district court therefore necessarily did not decide. The district court's opinion makes this unmistakably clear: "In its initial brief, Planned Parenthood does not challenge the denial of its motion to dissolve or modify the injunction, much less argue that it established changed circumstances." Planned Parenthood of Greater Orlando v. MMB Properties, 171 So. 3d 125, 128 (Fla. 5th DCA 2015). The opinion repeats the point: "None of Planned Parenthood's appellate arguments . . . relate to" the order that "denied the motion to dissolve or modify the injunction." Id. at 127 n.1.

The court makes a passing reference to the existing conflict of the Fifth District's case law with other districts concerning whether changed circumstances must be shown to justify modifying or dissolving a temporary injunction. Id. at 128 & n.3. But that passing reference to a conflict on an issue that was neither presented for review nor decided by the district court is not a proper basis for the exercise of conflict jurisdiction. What the district court said on this issue had no bearing on the resolution of the case and thus does not constitute a holding. Such dicta cannot properly serve as the basis for concluding that the decision is in express and direct conflict with another decision.

I therefore dissent. The case should be discharged.

POLSTON, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

　　　Fifth District - Case No. 5D14-2920

　　　(Osceola County)

Donald Edward Christopher and Kyle A. Diamantas of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Orlando, Florida,

　　　for Petitioner

Jamie Billotte Moses of Holland & Knight LLP, Orlando, Florida; Derek James Angell and Dennis Richard O'Connor of O'Connor & O'Connor, LLC, Winter Park, Florida; and Maureen Ann Arago and Keith Patrick Arago of Arago Law Firm, Kissimmee, Florida,

　　　for Respondent

Helene T. Krasnoff of Planned Parenthood Federation of America, Washington, District of Columbia, and Maithreyi Ratakonda of Planned Parenthood Federation of America, New York, New York,

　　　for Amicus Planned Parenthood Federation of America