# Third District Court of Appeal
## State of Florida

Opinion filed May 25, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2195
Lower Tribunal No. 21-3058
_____

**Kareen Lecorps and John Baptiste,**
Appellants,

vs.

**Star Lakes Association, Inc.,**
Appellee.

An appeal from a non-final order from the Circuit Court for Miami-Dade County, Beatrice Butchko, Judge.

Law Offices of Shaun M. Zaciewski, P.A., and Shaun M. Zaciewski, for appellants.

Marshall Dennehey Warner Coleman & Goggin, and Kimberly Kanoff Berman, and Patrick M. DeLong, and Holly M. Hamilton (Fort Lauderdale), for appellee.

Before FERNANDEZ, C.J., and EMAS, and MILLER, JJ.

MILLER, J.

Created in the late 1960s, Star Lakes Estates is a residential multicondominium development operated by a single association. After Building 12 was partially destroyed by fire, appellee, Star Lakes Association (the "Association"), determined the available insurance proceeds were insufficient to defray the projected cost of restoration. The Association then levied a special assessment upon all unit owners. Appellants, Kareen Lecorps and John Baptiste, along with a now-deceased unit owner, obtained a preliminary injunction invalidating the assessment, halting construction, and mandating the Association convene a membership meeting and community-wide vote. Approximately three weeks later, the Association successfully moved to dissolve the injunction. In this appeal, appellants contend the trial court erred in dissolving the injunction absent an identifiable change of circumstances and because the Association lacked authority to impose the assessment.[1] Discerning no abuse of discretion, we affirm the well-reasoned order under review.

## BACKGROUND

Star Lakes Estates consists of seventeen residential buildings and two commercial buildings. Through a separate declaration, each of the

---

[1] We summarily reject the unpreserved claim of error relating to reconstruction of the interior units.

2

seventeen residential buildings is a condominium, and each unit owner is subject to the condominium form of ownership. The Association derives its powers from its articles of incorporation, by-laws, and the governing documents of the individual condominiums. In May 2000, the by-laws of each condominium were amended to include the following: "The Star Lakes Association may operate the following listed condominiums as a single condominium for the purposes of financial matters, including budgets, assessments, accounting, record keeping, and similar matters, pursuant to the authority of Chapter 718.111(6) of the Florida Statutes . . . ."

In late 2017, Building 12 was engulfed by fire. The top floor units were destroyed, and the lower units sustained significant structural damage, rendering the building uninhabitable. The Association timely filed an insurance claim, and the insurer of the building tendered the full policy limits of approximately $1.49 million. The Association then notified all institutional Building 12 first mortgagees of the insurance payment, along with the need for reconstruction and repair. None of the mortgagees responded.

After retaining an engineer and contractor, the Association learned the insurance proceeds were insufficient to cover the projected construction costs. Written notice regarding the funding disparity was forwarded to each of the institutional first mortgagees, and the Association notified Building 12

3

unit owners that it intended to convene a special meeting to consider whether to abandon construction or levy a special assessment. After discussion, a majority of voting unit owners voted to rebuild.

The Association subsequently notified all Star Lakes Estates unit owners of a scheduled discussion and vote on a community-wide special assessment. The notice detailed a proposed aggregate special assessment in the amount of $1.25 million, of which $700,000.00 was allocated for restoring Building 12 and $550,000.00 was earmarked for the completion of forty-year recertifications, roof replacements, fire alarm installations, and legal expenses. At the duly convened meeting, the Association's board of directors voted 4-1 to impose the special assessment, payable over an eighteen-month period. Unit owners were then furnished with notices reflecting the payment terms.

Nearly all unit owners tendered the special assessment, and construction commenced. Appellants, unit owners in Buildings 21 and 30, along with a now-deceased unit owner, then filed suit against the Association, seeking declaratory and injunctive relief, as well as damages for breach of contract and negligence. As relevant to this appeal, appellants sought to terminate reconstruction of Building 12, alleging the special assessment was invalidly passed in violation of the Association's governing

4

documents.  The trial court convened an injunction hearing, at the conclusion of which it invalidated the assessment, enjoined any further construction, and ordered the Association to notice another meeting and allow all unit owners to vote on the assessment.  The Association later successfully moved to dissolve the injunction, and the instant appeal ensued.

## STANDARD OF REVIEW

The trial court enjoys broad discretion in dissolving temporary injunctions, and such action "will not be interfered with by appellate courts unless there is a clear showing that the [trial judge] abused his [or her] discretion." Cunningham v. Dozer, 159 So. 2d 105, 105 (Fla. 3d DCA 1963).

## ANALYSIS

The issuance of a preliminary injunction is an extraordinary remedy that should be granted sparingly.  Fla. High Sch. Activities Ass'n v. Kartenovich, 749 So. 2d 1290, 1291 (Fla. 3d DCA 2000).  Consequently, to obtain a temporary injunction, the moving party must establish: (1) a substantial likelihood of success on the merits; (2) the unavailability of an adequate remedy at law; (3) the likelihood of irreparable harm absent an injunction; and (4) that the injunction will serve the public interest.  Quirch Foods LLC v. Broce, 314 So. 3d 327, 338 (Fla. 3d DCA 2020).

5

Here, appellants' challenge to the special assessment is two-fold. First, they contend the Association was required to fund the outstanding restoration efforts by levying a special assessment upon only those unit owners in Building 12. Second, they alternatively assert that a community-wide vote was a prerequisite to levying the assessment upon all unit owners. We are not so persuaded.

Crucial to the resolution of these issues are two autonomous, yet convergent, sources of law. The first is Florida's "Condominium Act" (the "Act") codified in chapter 718, Florida Statutes (2022), and the second is the governing condominium documents.

Every condominium in Florida is created pursuant to chapter 718 of the Florida Statutes. § 718.102, Fla. Stat. "As condominium ownership is created only by statute, [legislative] acts also regulate the operation of condominiums." IconBrickell Condo. No. Three Ass'n, Inc. v. New Media Consulting, LLC, 310 So. 3d 477, 480 (Fla. 3d DCA 2020). In this vein, a declaration of condominium and by-laws must conform to the Act, and to the extent that they conflict therewith, the statute will prevail. Winkelman v. Toll, 661 So. 2d 102, 105 (Fla. 4th DCA 1995).

It is well-settled law that "[a] condominium association has the power to make and collect assessments, and to lease, maintain, repair, and replace

the common elements." Ocean Trail Unit Owners Ass'n, Inc. v. Mead, 650 So. 2d 4, 7 (Fla. 1994) (citing § 718.111(4), Fla. Stat.). In accord with this principle, an association may levy a special assessment upon unit owners to pay for common expenses. § 718.115(2), Fla. Stat. "Common expenses" are statutorily defined to include "the expenses of the operation, maintenance, repair, replacement, or protection of the common elements and association property, [and the] costs of carrying out the powers and duties of the association." § 718.115(1)(a), Fla. Stat. Property insurance deductibles and damages in excess of available insurance coverage also constitute common expenses. § 718.111(11)(j), Fla. Stat. In this regard, section 718.111(11), Florida Statutes, entitled "Insurance," reads:

> In order to protect the safety, health, and welfare of the people of the State of Florida and to ensure consistency in the provision of insurance coverage to condominiums and their unit owners, this subsection applies to every residential condominium in the state, regardless of the date of its declaration of condominium. It is the intent of the Legislature to encourage lower or stable insurance premiums for associations described in this subsection.

Consistent with this stated goal, the Act mitigates the risk associated with underinsuring the condominium property by additionally providing for the following:

> Any portion of the condominium property that must be insured by the association against property loss pursuant to paragraph (f) which is damaged by an insurable event shall be reconstructed,

7

repaired, or replaced as necessary by the association as a common expense. . . . All property insurance deductibles and other damages in excess of property insurance coverage under the property insurance policies maintained by the association are a common expense of the condominium . . . .

§ 718.111(11)(j), Fla. Stat.

Against this body of authority, it is evident that the Association was entitled to specially assess those expenses necessary to restore "the common elements and association property." § 718.115(1)(a), Fla. Stat. Such expenses necessarily involve the "maintenance, repair, replacement, or protection" of the elements and property. Id.; see § 718.111(11)(j), Fla. Stat.

Appellants rely upon a discrete provision in the Building 12 Declaration for the proposition that such expenses are properly levied only upon unit owners in the damaged building. Specifically, appellants contend that by notifying the institutional first mortgagees of the intent to rebuild, the Association triggered a requirement that it "immediately levy" a special assessment "against each unit" in Building 12. The provision upon which they rely reads as follows:

In the event institutional first mortgagees unanimously agree to have the insurance proceeds applied to reconstruction but the insurance proceeds are not sufficient to repair and replace all of the improvements within the common elements and within the units, a membership meeting shall be held to determine whether or not to abandon the condominium project or to levy a uniform

8

special assessment against each unit and the owners thereof as their interests appear, to obtain the necessary funds to repair and restore the improvements within the common elements and the units. In the event the majority of the voting members vote in favor of the special assessments, the Association shall immediately levy such assessment and the funds received shall be delivered to the escrow agent and disbursed as provided above . . . .

Reading the Declaration alone, this interpretation is plausible. The provision, however, cannot be read in isolation. Instead, we must consider the evidence of record and the relevant provisions of the Act.

The undeveloped record reflects no indication the "institutional first mortgagees unanimously agree[d] to have the insurance proceeds applied to reconstruction." The notices did not seek consent, and, assuming receipt, the mortgagees were silent.

Further, although ordinarily, as appellants correctly argue, "[t]he common expenses of a condominium within a multicondominium are the common expenses directly attributable to the operation of that condominium," there is an exception applicable to certain condominiums created prior to 1977. 10 Fla. Jur. 2d Condominiums § 76 (2022). In 1998, the Florida Legislature amended section 718.111(6), Florida Statutes, to permit the consolidated financial operations of two or more residential condominiums created before January 1, 1977. Expressly included among the authorized consolidated operations are "budgets, assessments,

9

accounting, recordkeeping, and similar matters." § 718.111(6), Fla. Stat. In the event two or more condominiums choose to consolidate their operations in accord with this statutory prerogative, notwithstanding other provisions of the Act, "common expenses for residential condominiums in such a project being operated by a single association may be [proportionally] assessed against *all unit owners* in such project." Id. (emphasis added).

In the instant case, following turnover, the individual buildings located within the Star Lakes Estates community opted to consolidate their financial operations and vest governing authority in the Association. The legal effect of this merger is clear. There is only one governing entity. The Association is authorized to operate the seventeen buildings as a single condominium for financial purposes, including levying assessments. Consequently, the Association is permitted to make and collect assessments for common expenses from all unit owners, as though each maintains ownership in a single condominium.

Moreover, recognizing the need for affordable premiums and the risk attendant to underinsuring common property, our legislature has recognized that an association may, at times, prioritize the former over the latter. In such circumstances, an insurable event encumbers an association with the duty to assess any excess restoration costs as common expenses. See §§

10

718.111(4), (11)(j), Fla. Stat. Where condominiums have agreed to consolidated financial operations, limiting collection of the special assessment from the owners of units in a singularly damaged building would yield a reduced premium windfall for all other unit owners, while concomitantly allowing them to avoid any risk associated with underinsuring the property. The Act carefully guards against this result.

Appellants alternatively argue the assessment was invalid because the Association failed to convene a vote of all unit owners, as opposed to board members. A well-developed body of decisional authority holds that an association need not conduct a vote of unit owners before levying assessments for urgently needed repairs to the common elements. See Farrington v. Casa Solana Condo. Ass'n, Inc., 517 So. 2d 70, 72 (Fla. 3d DCA 1987); Cottrell v. Thornton, 449 So. 2d 1291, 1292 (Fla. 2d DCA 1984). No provision of the Act suggests otherwise. Instead, all that is required is a properly noticed meeting declaring the amount of the proposed assessment and its intended purpose. See § 718.112(2)(c)1., Fla. Stat.

This procedure is consistent with the Association's by-laws, which provide, in relevant part:

> At all meetings of the Board, a majority of the Directors shall be necessary and sufficient to constitute a quorum for the transaction of business, and the act of a majority of the Directors present at any meeting at which there is a quorum shall be the

11

act of the Board of Directors, except as may be otherwise specifically provided for by statute or by the Certificate of Incorporation or by these By-Laws.

Indeed, a procedure to the contrary would presuppose that unit owners are incentivized to vote for the collective good, rather than in their own financial interests. This is precisely why there is a board of a directors with a fiduciary duty to all unit owners.

Here, it is scarcely debatable the repairs were urgently needed in the aftermath of the fire. Thus, as the notice preceding the board vote reflected that portion of the special assessment that would be allocated to the reconstruction of the damaged building and the special assessment garnered a majority vote, the Association conformed with the requirements of law. See § 718.112(2)(c)1. Fla. Stat.

In conclusion, declining to exalt form over substance, we reject the contention that absent a change in circumstances, the trial court was constrained by its prior ruling. It is axiomatic that the trial court retains inherent authority to reconsider any of its nonfinal rulings prior to entry of the final judgment or another order terminating the action. See Silvestrone v. Edell, 721 So. 2d 1173, 1175 (Fla. 1998). Rigid adherence to the proposition that a party moving to dissolve a temporary injunction has the burden to prove some change of circumstances that justifies dissolution would render

a trial court impotent to correct clear error.  See <u>Planned Parenthood of Greater Orlando, Inc. v. MMB Props.</u>, 211 So. 3d 918, 920 (Fla. 2017).

Here, in a commendable concession, the trial court found "there was clear legal error and a misapprehension of facts on its part when it granted" appellants' motion for temporary injunction, "thereby leading the [c]ourt to erroneously determine that [appellants] have a substantial likelihood of success on the merits of the underlying action."  By the time the court rendered this ruling, all but seventeen of the nearly four hundred unit owners had paid the assessment, and the restoration was eighty-percent complete. Under these circumstances, we conclude there was a sufficient basis in both law and fact for dissolution, and allowing the injunction to stand would have been "incompatible with equity principles."  <u>MMB Props.</u>, 211 So. 3d at 925. Accordingly, we affirm in all respects.

Affirmed.